UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

YARON KWELLER and ZOE LIBERMAN,

                Plaintiffs

    - against -

THE COUNTY OF BROOME, THE CITY OF BINGHAMTON, DISTRICT ATTORNEY MICHAEL A. KORCHAK, CHIEF ASSISTANT DISTRICT ATTORNEY MARK LOUGHRAN, ASSISTANT DISTRICT ATTORNEY ALYSSA CONGDON, ASSISTANT DISTRICT ATTORNEY AMANDA CRONIN, DISTRICT ATTORNEY INVESTIGATOR JEFF J. WAGNER, BINGHAMTON POLICE DEPARTMENT CHIEF JOSEPH ZIKUSKI, BINGHAMTON POLICE DEPARTMENT CAPTAIN CORY MINOR, BINGHAMTON POLICE DEPARTMENT INVESTIGATOR AMANDA MILLER, all in their individual capacities, and JOHN DOES 1-10, representing Broome County District Attorney's Office and Police Department Employees Whose Names Are Currently Unknown, HAILEY DEMKOVICH, and SAMANTHA HERCEG,

                Defendants.

Case No. 3:25-cv-343 (AJB/ML)

## DEFENDANT THE COUNTY OF BROOME'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Respectfully submitted,

The Wladis Law Firm, P.C.
*s/Christopher J. Baiamonte*
Christopher J. Baiamonte, Esq. (702528)
*s/Timothy J. Lambrecht*
Timothy J. Lambrecht (510390)
*Attorneys for Defendant, The County of Broome*
P.O. Box 245, Syracuse, NY 13214
(315) 445-1700 (Office)
E-mail:  cbaiamonte@wladislawfirm.com
        tlambrecht@wladislawfirm.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ..................................................................... 1

ARGUMENT ................................................................................. 3

    I.     STANDARD OF REVIEW ON RULE 12(B)(6) MOTION TO DISMISS ................ 3

    II.    PLAINTIFFS' *MONELL* FAILS AS A MATTER OF LAW ..................................... 3

    III.   THE COMPLAINT'S THIRD CAUSE OF ACTION FOR FAILURE
          TO  INTERVENE SHOULD BE DISMISSED AGAINST THE COUNTY ............. 7

    IV.   PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR SECTION 1983
          CONSPIRACY SHOULD BE DISMISSED AGAINST THE COUNTY ................. 9

    V.    STATE LAW CLAIMS ARE BARRED BY THE DOCTRINE OF
          GOVERNMENT IMMUNITY AND THE SPECIAL DUTY RULE ...................... 12

    VI.   PLAINTIFF'S EIGHTH CAUSE OF ACTION FOR FALSE ARREST AND
          MALICIOUS PROSECUTION SHOULD BE DISMISSED AGAINST THE
          COUNTY ....................................................................... 13

    VII.  PLAINTIFF'S NINTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST
          THE COUNTY .................................................................. 16

        A. Intentional Infliction of Emotional Distress ........................... 17

        B. Negligent Infliction of Emotional Distress ............................ 18

    VIII. PLAINTIFF'S TENTH CAUSE OF ACTION FOR VIOLATION OF THE NEW
          YORK STATE CONSTITUTION SHOULD BE DISMISSED AGAINST THE
          COUNTY ....................................................................... 19

    IX.   PLAINTIFF'S ELEVENTH CAUSE OF ACTION SHOULD BE DISMISSED
          AGAINST THE COUNTY ....................................................... 20

CONCLUSION .............................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*A.M.P. v. Benjamin*, 201 A.D.3d 50, 57 (3d Dept. 2008) .............................................. 18

*Alexander v. Westbury Union Free School Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011) ...... 20

*Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018) .................................... 19

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) .................................................................. 3

*Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) ............................................................ 6

*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410–11 (1997) ............................................ 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ...................................................... 3

*Bell v. Miller*, 164 A.D.3d 728, 729 (2d Dept. 2018) ....................................................... 15

*Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012) .................................. 7

*Brady v. Maryland*, 373 U.S. 83 (1963) ....................................................................... 5

*Brown v. New York City Health & Hosps. Corp.*, 225 A.D.2d 36, 44 (2d Dept. 1996) .............. 18

*Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 479 (W.D.N.Y. 2017) ................................................ 13

*Buari v. City of New York*, 530 F.Supp.3d 356, 395 (S.D.N.Y. 2021) ........................................ 11

*Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)........................................ 10

*City of Canton v. Harris*, 489 U.S. 378, 388 (1989)........................................................... 4

*City of Okla. v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ...................................................... 7

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1985) .......................................... 4

*Connick v. Thompson*, 563 U.S. 51, 61 (2011). ................................................................ 6

*D.S. v. City of New York*, 736 F. App'x 284, 287 (2d Cir. 2018) .................................................. 7

*Dunlop v. City of New York*, 2008 WL 1970002, at *9 (S.D.N.Y. 2008).................................... 11

*Figueroa v. Mazza*, 825 F.3d 89 (2d Cir. 2015) .............................................................. 8

*Gabriel v. City of New York*, 89 A.D.3d 982, 983 (2d Dept. 2011)................................. 12

*Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)................................................. 10

*Giglio v. United States*, 405 U.S. 150 (1972) ......................................................... 5

*Guadagni v. N.Y.C. Trans. Auth.*, 2009 WL 1910953, at * 4 (E.D.N.Y. 2009) ................ 13

*Haddock v. City of New York*, 75 N.Y.2d 478, 484 (1990) ....................................... 12

*Hernandez v. State*, 228 AD2d 902 (3d Dept. 1996)................................................ 15

*James v. Flynn*, 132 A.D.3d 1214, 1216 (3d Dep't 2015)........................................ 17

*Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) ...................... 9

*Jorgensen v. County of Suffolk*, 558 F Supp 3d 51, 65 (E.D.N.Y. 2021) .................... 15

*Kee v. City of New York,* 12 F.4th. 150, 161–62 (2d Cir. 2021)................................ 14

*King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997)................................ 13

*Longo v. Ortiz*, 2016 WL 5376212, at *4 (S.D.N.Y. 2016)........................................ 16

*Lyles v. State*, 2 A.D.3d 694, 695-696 (2d Dept. 2003)........................................... 19

*Maldovan v. Cnty. of Erie*, 39 N.Y.3d 166, 171 (2022)........................................... 13

*Mayzick v. County of Nassau*, 32 F. Supp. 3d 399, 402 (E.D.N.Y. 2014)..................... 15

*Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)..................... 2

*Morgan v. City of Utica*, 2021 WL 2036680, at *2 (N.D.N.Y. 2021)........................... 7

*Myers v. Moore*, 326 F.R.D. 50, 60 (S.D.N.Y. 2018)............................................... 16

*Nardelli v. Stamberg*, 44 N.Y.2d 500, 503 (1978).................................................. 15

*Palsgraf v. Long Is. R.R. Co.*, 248 NY 339, 341 (1928)........................................... 18

*Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) .................................................. 4

*Pierre v. The City of New York*, 860 F. App'x 14, 15 (2d Cir. 2021) .......................... 9

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)............................ 6

*Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008)................................................................ 4

*Rothstein v. UBS AG,* 708 F.3d 82, 94 (2d Cir. 2013)..................................................................... 3

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779

    (2d Cir. 1984)........................................................................................................................... 3

*Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003) ................................................................. 13

*Schultes v. Kane*, 50 AD3d 1277, 1278 (3d Dept. 2008)............................................................... 18

*Sheila C. v. Povich*, 11 A.D.3d 120, 130 (1st Dept. 2004) ........................................................... 18

*Tango v. Tulevech*, 61 N.Y.2d 34, 41 (1983)................................................................................. 12

*Valdez v. City of New York*, 18 N.Y.3d 69, 76–77 (2011).............................................................. 12

*Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017) ........................................................ 16

*Willis v. Rochester Police Dept.*, 2018 WL 4637378, at *6 (W.D.N.Y. 2018) ............................ 16

*Wright v. Orleans County*, 2015 WL 5316410, at *11 (W.D.N.Y. 2015) ..................................... 14

**Statutes**

42 U.S.C. § 1983............................................................................................................................. 2

CPLR 215(3) .................................................................................................................................. 17

**Other Authorities**

Article I §§ 6 and 12 of the New York State Constitution............................................................ 19

## PRELIMINARY STATEMENT

This action is the third of three similar actions brought in this District against Defendant Broome County ("Defendant" or "County"), the City of Binghamton and various individual County and City defendants and two private individuals stemming from the same incident. *See generally Kweller v. Broome County, et al.* (3:24-cv-01328) ("*Kweller I*") and *Rindgen v. Broome County*, *et al*. (3:24-cv-1325) ("*Rindgen*"). The County previously moved to dismiss the complaint under Rule 12(b)(6) in *Kweller I* and for similar reasons it moves to dismiss the plaintiffs' complaint under Rule 12(b)(6) here.[1] As explained below, plaintiffs do not state cognizable legal claims against the County.

## STATEMENT OF FACTS

Plaintiffs' claims include false arrest, malicious prosecution, and failure to intervene, among others. The complaint spans a wide array of grievances, but in reality it lacks specific factual allegations tying the County itself to the alleged misconduct.

Plaintiff Leor Kweller alleges that he was falsely accused of rape by defendants Hailey Demkovich and Samantha Herceg following events that occurred in Binghamton, New York, on the evening of November 26 and into the early morning hours of November 27, 2021. The events unfolded primarily at several places of business—The Colonial, Stone Fox, and Dos Rios—part-owned by plaintiff Kweller's brother, Yaron Kweller, as well as at his brother's office on

---

[1] The County previously answered the *Rindgen* complaint, but it intends to file a Rule 12(c) motion in that matter.

Washington Street in Binghamton. He describes these events at length in his complaint. *See generally* Complaint ("Compl.") at ¶¶ 28-60.

The resulting accusations from that evening culminated in criminal charges, arrest and prosecution against plaintiff Kweller, Yaron Kweller and Jordan Rindgen. In March 2022, a grand jury indicted plaintiff Kweller for Rape in the First Degree in violation of New York Penal Law §130.35(2) and Sexual Abuse in the First Degree in violation of New York Penal Law §130.65(2). *See id.* at ¶¶ 170-71. However, these charges subsequently were dismissed against him by the Hon. Carol A. Cocchiola on May 30, 2023.[2] *See id.* at ¶ 4.

Plaintiffs allege twelve causes of action in their complaint, including seven against the County. Three are federal claims against the County, all brought pursuant to 42 U.S.C. § 1983. The third cause of action is for failure to intervene, the fifth cause of action is for municipal liability pursuant to *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and the seventh cause of action is a civil rights conspiracy claim. Plaintiffs also bring four companion state law claims. These are for false arrest and malicious prosecution, intentional/reckless/negligent infliction of emotional distress, New York State Constitutional claims and a *respondeat superior* claim. His wife, plaintiff Zoe Liberman, was not involved in the incident, but alleges collateral loss of consortium damages as a result of it.

---

[2] Following a jury trial, both Yaron Kweller and Mr. Rindgen were acquitted of all charges in October 2023. *See* Compl. at ¶ 200.

Problematically for plaintiffs, these allegations primarily focus on individual actions, with very limited or no reference to broader policies or directives involving the County. The complaint does not sufficiently specify actions taken by Broome County as a municipality, outline any direct involvement by the County itself in the events of the evening or the subsequent investigation, or articulate any policy or custom maintained by the County that directly contributed to any violation of plaintiffs' constitutional or other rights, which is why dismissal is appropriate here.

## ARGUMENT

### I.    STANDARD OF REVIEW ON RULE 12(B)(6) MOTION TO DISMISS

The purpose of a Rule 12(b)(6) motion to dismiss is to assess the legal feasibility of the complaint, not to weigh the evidence which the plaintiff offers or intends to offer. *See Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir. 1984). In reviewing the sufficiency of the complaint, a court accepts as true the complaint's factual allegations, and the reasonable inferences that can be drawn therefrom. *See Rothstein v. UBS AG,* 708 F.3d 82, 94 (2d Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations, internal quotation marks, and citations omitted). Nor is a court bound to accept as true a legal conclusion couched as a factual allegation. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### II.    PLAINTIFFS' *MONELL* FAILS AS A MATTER OF LAW

Plaintiffs' fifth cause of action is a *Monell* claim. It fails because plaintiffs do not sufficiently articulate any County policy or custom that violated plaintiff Kweller's constitutional rights.

Generally, a municipality, such as a County, cannot be held liable for violation of civil rights solely on the basis of the existence of an employer-employee relationship. *Monell*, 436 U.S. at 692, 94-95. Instead, municipalities are responsible only for "their own illegal acts," *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986), and are not vicariously liable for civil rights violations perpetrated by their employees. *See Monell*, 436 U.S. at 691.

*Monell* serves as sort of a gatekeeping function for civil rights claims against municipalities: municipal liability *is* permitted, but can be imposed *only* if a plaintiff demonstrates a constitutional injury resulting from the "execution of a government's policy or custom" and that policy or custom must be "the moving force of the constitutional violation," rather than a mere contributing factor. *Id*.

To allege a plausible municipal policy or custom, a plaintiff must offer facts showing any of the following: (1) a formal policy, officially promulgated by the municipality, *id*. at 690; (2) an action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur*, 475 U.S. at 483-84; (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1985) (plurality opinion); or (4) a failure to train, supervise, or discipline that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

The allegations in the complaint suggest that plaintiffs' focus is on the fourth and (possibly) the first prong, too. At the heart of their *Monell* claim, plaintiffs allege that the County:

● "failed to implement policies and procedures *including training and supervision* to ensure that criminal defendants like Plaintiff who are being investigated and charged by or through

4

their offices would not have their constitutional rights violated," Compl. at ¶ 267 (emphasis supplied); and

● "had *unconstitutionally infirm policies and procedures* that led to assistant district attorneys not knowing their obligations under *Brady, Giglio,* and discovery; or knowing the law as to obtaining critical evidence that went to the heart of an ongoing investigation." *Id.* at ¶ 268.

For support of the allegations, plaintiffs' suggest that the County allowed defendant Alyssa Congdon to become the Bureau Chief of the Special Victims Bureau, despite her allegedly having zero experience and competence to handle this position, *see id.* ¶ 269, and that she failed to decline the assignment. *See id.* at ¶ 271.

Assigning ADA Congdon to lead the prosecution of plaintiff Kweller's case does not create an actionable municipal policy or custom under the exacting standard of *Monell*. As plaintiffs acknowledge, defendant Congdon had been "practicing criminal defense for nearly a decade." *Id.* at ¶ 103(f). Her decade of experience as a defense attorney reasonably suggested to the County that she would be familiar with foundational prosecutorial obligations such as *Brady* and *Giglio* disclosures, as well as the duty to preserve evidence.[3] Any reasonable employer in the County's position would justifiably rely on her extensive professional experience to ensure compliance with these established requirements.

---

[3] The cases referred to here are well-known to the Court and the parties: *Brady v. Maryland*, 373 U.S. 83 (1963) (requiring the prosecution to turn over all exculpatory evidence to defendant in criminal case) and *Giglio v. United States*, 405 U.S. 150 (1972) (requiring prosecution to disclose any information that could be used to impeach credibility of prosecution witness).

To the extent plaintiffs allege that the County should have provided defendant Congdon additional remedial instruction on these well-established legal obligations, the allegation falls far short of establishing a policy so likely to result in constitutional violations as to demonstrate "deliberate indifference" on the part of the County. The complaint acknowledges that defendant Amanda Cronin, who "had served as a sex crimes prosecutor for a number of years … was also assigned to the instant case," *id.* at ¶ 127, which vitiates any such claim.

Additionally, *Monell* claims relying solely on hiring or delegation decisions are rejected by courts, unless a plaintiff can show a pattern of misconduct or that a policymaking[4] official's decision evidenced a conscious disregard for "an obvious risk that the [employee] would subsequently inflict a particular constitutional injury." *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410–11 (1997). Nothing like that has been alleged against the County here. Generally, a single incident (as alleged here) involving actors below the policy-making level (as legally exists here) is insufficient to show a municipal policy. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

Further, a Section 1983 claim against a municipality "is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). This is because the

---

[4] A word or two on the policymaker requirement: plaintiffs make a blanket assertion that all of the County affiliated attorneys individually named in the complaint are "policy makers," Compl. at ¶¶ 252, 274, and suggest that all actions taken by any County policymaker are inherently a "policy or custom" for *Monell* purposes. This argument is mistaken.

The Second Circuit looked at this very issue some 40 years ago in *Baez v. Hennessy*, 853 F.2d 73 (2d Cir. 1988). It determined that in New York, a County District Attorney's "prosecutorial acts may not 'fairly be said to represent official policy' of the County." By law, none of the individual County attorney defendants are policymakers.

municipality's failure to train "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.* "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* Therefore, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012) (*quoting Connick*, 563 U.S. at 62). Again, nothing like that is alleged here.

Finally, courts require a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *D.S. v. City of New York*, 736 F. App'x 284, 287 (2d Cir. 2018) (*quoting Canton,* 489 U.S. at 385). That a policy or custom *might* lead to prosecutorial misconduct:

> is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between, for example, the training inadequacies alleged, and the particular constitutional violation at issue.

*City of Okla. v. Tuttle*, 471 U.S. 808, 824 n.8 (1985).

Putting aside the policymaker issue, alleging that the County insufficiently trained both a prosecutor with nearly 10 years of experience in criminal defense law and a prosecutor who had served as a sex crimes prosecutor for a number of years in *Brady* and *Giglio* and other discovery obligations is not sufficient to present a *Monell* claim against the County.

Plaintiffs' *Monell* allegations fall far short of the "rigorous standards of culpability and causation" required to impose municipal liability, *Brown*, 520 U.S. at 405 and must be dismissed.

## III.   THE COMPLAINT'S THIRD CAUSE OF ACTION FOR FAILURE TO INTERVENE SHOULD BE DISMISSED AGAINST THE COUNTY

Plaintiffs' third cause of action theorizes that the County is liable under Section 1983 for "failure to intervene" to prevent various alleged constitutional violations regarding plaintiff

7

Kweller's prosecution. This claim should be dismissed. First, as just articulated, plaintiffs have not met the *Monell* pleading requirements to state a claim of municipal liability under Section 1983. Beyond that, they do not plead the requisite elements of a claim for failure to intervene, as described below.

Failure to intervene claims under Section 1983 often involve situations where police or corrections officers or fail to intervene in a situation where the plaintiff is the victim of excessive force in violation of his or her Eighth Amendment rights and the officer fails to intercede to stop the harm. *See*, *e.g.*, *Figueroa v. Mazza*, 825 F.3d 89 (2d Cir. 2015) (claim for failure to intercede brought against police officers for failing to stop unidentified colleague from unlawfully assaulting plaintiff in police car).

This situation is different. Plaintiffs conclusorily allege that several individual defendants, including employees associated with the County, had "opportunities to intervene on behalf of Leor Kweller to prevent his false arrest, malicious prosecution, false imprisonment, and deprivation of liberty without due process of law, but, due to their intentional conduct and/or reckless or deliberate indifference, declined or refused to do so." Compl. at ¶ 238.

Generally, to succeed on a Section 1983 claim for failure to intervene, a plaintiff must prove that: (1) a violation of his constitutional rights was ongoing or about to occur; (2) the defendant knew this at the time; (3) the defendant had a reasonable opportunity to intervene to prevent harm to the plaintiff; and (4) the defendant failed to take reasonable steps to intervene. *See Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (*citing O'Neill v.*

*Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)).[5]  Here, plaintiffs do not allege that the County had any reasonable opportunity to intervene—whatever a County intervention might even look like—and what reasonable steps it could have taken to intervene.

Plaintiffs broadly allege that several individual defendants failed to intervene to prevent constitutional violations related to plaintiff Kweller's prosecution, but they do not allege facts showing that the County had a realistic opportunity to intervene.  They fail to allege or articulate how the County, as a municipal entity, was positioned to prevent or remedy those violations in real time—*e.g.*, such as how the defendant police officers in the *Figueroa* case could have intervened to stop that the assault on that plaintiff.  Plaintiffs do not identify any County officials who were contemporaneously aware of ongoing violations or had the capacity to take corrective action during critical moments and they do not identify any County policy or custom that led to the supposed failure to intervene, which as discussed above is a prerequisite under *Monell*.  Instead, plaintiffs' allegations regarding the County's role are bare and speculative and make no allegation that the County was involved in or aware of the specific events that allegedly caused harm.  *See generally* Compl. at ¶¶ 102–125.  Without concrete allegations linking the County to a missed opportunity to intervene, plaintiffs' failure to intervene claim is unsupportable and must be dismissed.

IV.     **PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR SECTION 1983 CONSPIRACY SHOULD BE DISMISSED AGAINST THE COUNTY**

---

[5] Additionally, a plaintiff cannot succeed on a claim for failure to intervene when there is no underlying constitutional violation.  *See Pierre v. The City of New York*, 860 Fed. Appx 14, 15 (2d Cir. 2021).

Plaintiffs' seventh cause of action alleges a Section 1983 conspiracy claim against the County. To survive a motion to dismiss on this kind of claim, a plaintiff must allege: (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (citations and quotation marks omitted); *see also Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (holding to survive a motion to dismiss, plaintiff must allege more than "conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights").

The allegations concerning the retrieval and disclosure of cell phone data from defendants Herzog and Demkovich undermine his claim of a conspiracy involving the County District Attorney's Office. Plaintiffs acknowledge that efforts were made to retrieve the data, but were frustrated by Herzog and Demkovich's refusals to cooperate and, allegedly, by defendant Wagner's failure to comply with instructions to collect evidence. These assertions directly contradict their claim that there was an agreement where the County agreed with any party to suppress evidence. To the contrary, they instead suggest active, albeit allegedly deficient, attempts to obtain and preserve it. Plaintiffs' allegation that there were delays in the disclosure of this evidence are attributed to defendant Congdon's alleged lack of experience or competence, not to a nefarious coordination by the County with either defendants Herzog and Demkovich, the City defendants, or any other parties.

Plaintiff's conclusory allegation that all defendants "agreed" to "act in concert" are insufficient. *Bertuglia*, 839 F. Supp. 2d at 728; *see also Ciambriello*, 292 F.3d at 325 ("vague and conclusory" allegations do not support Section 1983 conspiracy claim).  To the extent plaintiffs allege that a conspiracy existed within the County, "[t]he intracorporate conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Dunlop v. City of New York*, No. 06 Civ. 0433(RJS), 2008 WL 1970002, at *9 (S.D.N.Y. May 6, 2008) (quotation marks and citation omitted). Furthermore, "it is well-settled that the doctrine bars conspiracy claims alleging concerted action by employees and/or the heads of various departments within a single municipal entity," including the County as an entity and its District Attorney's Office, "at least where the complaint fails to allege that the various entities were effectively acting as separate entities in carrying out the alleged conspiracy." *Id.* (citations omitted). Thus, the intracorporate conspiracy doctrine applies when a complaint "clearly depict[s]" a conspiracy "as the product of a single corporation acting exclusively through its own directors, officers, and employees." *Id.* at *10 (quotation marks and citation omitted).

There is also no allegation that the alleged conspirators, including the County, "intended to act together for their shared mutual benefit within the scope of the conspiracy." *Buari v. City of New York*, 530 F.Supp.3d 356, 395 (S.D.N.Y. 2021) (granting motion to dismiss Section 1983 conspiracy claim for "bare assertion of conspiracy" and failure to allege facts sufficient to support conspiracy).  This Court has "no obligation to entertain pure speculation and conjecture," *Gallop*, 642 F.3d at 368, and absent specific facts pled to suggest that the County had a meeting of the minds with another party to cause an unconstitutional injury, plaintiffs' claim should be dismissed. *See id.* at 369.

## V.    STATE LAW CLAIMS ARE BARRED BY THE DOCTRINE OF GOVERNMENT IMMUNITY AND THE SPECIAL DUTY RULE

All of the state law claims in the complaint should be dismissed because they are based on allegations of negligence related to the County's discretionary functions, which are immune from liability under New York law.

In New York, municipal defendants, like the County, have governmental immunity "when official action involves the exercise of discretion or expert judgment." *Haddock v. City of New York*, 75 N.Y.2d 478, 484 (1990) (citations omitted).  As explained by the New York Court of Appeals:

> [g]overnmental immunity under the decisional law of this State does not attach to every act, but when official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, *a municipal defendant generally is not answerable in damages for the injurious consequences of that action*.  . . .  Whether absolute or qualified, this immunity reflects a value judgment that--despite injury to a member of the public--the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury.

> While the line separating discretionary and ministerial action may sometimes blur, it is clear that "discretionary or quasi-judicial acts involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result."

> *Id.* (*citing Tango v. Tulevech*, 61 N.Y.2d 34, 41 (1983)).

Governmental actions, such as hiring decisions and investigative choices, are discretionary when they require judgment or policy decisions and are not subject to liability.  *See Valdez v. City of New York*, 18 N.Y.3d 69, 76–77 (2011).  Discretionary decisions, such as whether to obtain a warrant for evidence, are precisely the type of conduct protected under the governmental immunity doctrine.  *See Gabriel v. City of New York*, 89 A.D.3d 982, 983 (2d Dept. 2011).

Even if the actions were ministerial, which the County disputes, plaintiffs would be required to plead a "special duty" owed to them by the County, which the complaint does not do. *See Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 479 (W.D.N.Y. 2017). A special duty would require a statutory obligation, voluntary assumption of a duty creating reliance, or control over a dangerous condition. *See Maldovan v. Cnty. of Erie*, 39 N.Y.3d 166, 171 (2022).

Whether the Court finds that the actions of the County with respect to the facts and allegations in the complaint are discretionary or ministerial, all of plaintiffs' pendent state law causes of action should be dismissed. That said, further discussion of these claims follows.

## VI. PLAINTIFF'S EIGHTH CAUSE OF ACTION FOR FALSE ARREST AND MALICIOUS PROSECUTION SHOULD BE DISMISSED AGAINST THE COUNTY

Plaintiffs' eighth cause of action asserts that the County (and other defendants) falsely arrested and maliciously prosecuted plaintiff Kweller. The claim against the County must be dismissed, both because of the government immunity issue and because the complaint does not raise sufficient allegations against the County for these claims.

"To state a claim for false arrest or false imprisonment under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." *Guadagni v. N.Y.C. Trans. Auth.*, No. 08–CV–3163 (CPS)(SMG), 2009 WL 1910953, at *4 (E.D.N.Y. Jun. 30, 2009) (citing *Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003)). "To prove intent, the defendant must have either (a) confined or intended to confine the plaintiff or (b) affirmatively procured or instigated the plaintiffs' arrest." *King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997).

"To prevail on a malicious prosecution claim under New York law and federal law, a plaintiff must show: (1) the commencement or continuation of a criminal proceeding by the

defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Kee v. City of New York,* 12 F.4th. 150, 161–62 (2d Cir. 2021) (internal citations and punctuation omitted). The Complaint fails to satisfy these elements.

A grand jury's indictment creates a presumption of probable cause that can only be rebutted by a showing that the indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino*, 331 F.3d at 72 (citations and quotation marks omitted). "[I]t is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment," and that burden cannot be met by "mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Id*. at 73 (citations and quotation marks omitted).

Even if plaintiffs' false arrest claims were supported by sufficient factual detail, they are barred by the indictment returned by the grand jury, which "establishes the requisite probable cause to extinguish" any Section 1983 and state law claims based on false arrest and malicious prosecution. *See Wright v. Orleans County*, No. 14–CV–00622A(F), 2015 WL 5316410, at *11 (W.D.N.Y. Sep. 10, 2015), *report and recommendation adopted*, 2015 WL 13660397 (W.D.N.Y. 2015) (holding grand jury indictment "establishes the requisite probable cause to extinguish Plaintiffs' common law false arrest and malicious prosecution claims, as well as Plaintiffs' § 1983 claims based on false arrest and malicious prosecution"). Nor do plaintiffs allege any facts against the County to establish that the indictment was secured through bad faith or perjury in a manner that could rebut the "presumption of probable cause" arising from the indictment. *See id*.

Regarding the malicious prosecution claim, "[t]o prove actual malice, the plaintiff must show that the defendant 'commenced the prior criminal proceeding due to a wrong or improper

14

motive, something other than a desire to see the ends of justice served.'" *McGee v. Dunn*, 940 F. Supp. 2d 93, 102 (S.D.N.Y. 2013) (*quoting Nardelli v. Stamberg*, 44 N.Y.2d 500, 503 (1978)). Where a plaintiff alleges only poor negligence in conducting an investigation, "[t]hat is not enough to support a malicious-prosecution claim." *Williams v. Carpenter*, 214 F.Supp.3d 197, 201 (W.D.N.Y. 2016).

In contrast, here what few allegations to be found in the complaint regarding this claim "are short, conclusory, and almost entirely devoid of appreciable factual content." *Mayzick v. County of Nassau*, 32 F. Supp. 3d 399, 402 (E.D.N.Y. 2014) (granting motion to dismiss false arrest claim). Plaintiff alleges that in or around February 2022, "Defendant Congdon decided that Plaintiff, Yaron Kweller, and Jordan Rindgen should be arrested and charged in local court." Compl. ¶ 128. That is not enough to impugn the County.

To the extent that Plaintiff's false arrest claims might be premised on any allegations that the County failed to pursue additional investigative measures, such as securing warrants for plaintiff Kweller's DNA or the Demkovich's or Herceg's phones, plaintiffs have no cognizable claim for a negligent investigation. *See, e.g., Hernandez v. State*, 228 AD2d 902 (3d Dept. 1996) ("New York does not recognize an action alleging negligent investigation or prosecution of a crime"); *see also Bell v. Miller*, 164 A.D.3d 728, 729 (2d Dept. 2018), *lv denied* 32 N.Y.3d 911 (2018); *Jorgensen v. County of Suffolk*, 558 F Supp 3d 51, 65 (E.D.N.Y. 2021).

Plaintiffs' conclusory allegations also fail to rebut the presumption of probable cause, as they do not plausibly suggest that the indictment against plaintiff Kweller was procured through misconduct or bad faith. Even very generously construed, any claims against the County itself allege only incompetence, which is insufficient for purposes of a malicious prosecution claim. *See,*

*e.g., Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017) (malicious prosecution claim cannot be based on "series of negligent acts by government officials").

Finally, plaintiffs claim that various individual defendants fabricated evidence and withheld exculpatory evidence—but as against the County, they fail to meet even basic pleading standards with this claim. Plaintiffs do not allege what evidence the County supposedly fabricated or withheld, or how the County purportedly engaged in any misconduct here. Bare allegations are not enough to state a claim versus the County here. *See Myers v. Moore*, 326 F.R.D. 50, 60 (S.D.N.Y. 2018) ("Plaintiff engages in group pleading, lumping the three defendants together without pleading facts demonstrating what each did that makes him liable for malicious prosecution. ... Accordingly, the [a]mended [c]omplaint does not sufficiently plead a malicious prosecution claim"); *Willis v. Rochester Police Dept.*, 15-CV-6284-FPG, 2018 WL 4637378, at *12 (W.D.N.Y. Sep. 27, 2018) (dismissing malicious prosecution claim for failure to state a claim where the plaintiff only made "passing reference to 'false statements of facts' ... but fail[ed] to provide any further, or factual, context for that allegation"); *Longo v. Ortiz*, 15-CV-7716 (VEC), 2016 WL 5376212, at *4 (S.D.N.Y. Sep. 26, 2016) ("Plaintiff's allegations as to false or fabricated information are entirely conclusory and generalized and do not contain the specificity required to state a claim for malicious prosecution") (citations omitted). The false arrest and malicious prosecution claim against the County must be dismissed.

## VII.    PLAINTIFF'S NINTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY

Plaintiffs' ninth cause of action alleges that all defendants are liable for intentional, reckless[6] or negligent infliction of emotional distress under New York law.

### A.    Intentional Infliction of Emotional Distress

It is well-settled that under New York law, public policy bars claims sounding in intentional infliction of emotional distress (IIED) against a governmental entity, like the County. *See Lauer v. City of New York*, 240 A.D. 543 (2d Dep't 1997) (citations omitted); *Melendez v. City of New York*, 171 A.D.3d 566, 566 (1st Dept 2019). This bar to suit for IIED claims is above and beyond the protection offered through the general rule of governmental immunity. *See Haddock*, 75 N.Y.2d at 484 (1990). Plaintiffs' IIED claim against the County is categorically barred and must be dismissed.

Additionally, even if it was not barred, claims for IIED are subject to a one-year statute of limitations under CPLR 215(3). *See Gallagher v. Directors Guild of Am.*, 144 A.D.2d 261 (1st Dep't 1988); *Ross v. Louise Wise Servs., Inc.*, 28 A.D.3d 272 (1st Dep't 2006). Plaintiffs' complaint was filed on March 18, 2025, meaning that the events giving rise to their pending IIED claim had to have occurred within a year prior to the complaint. The events purportedly giving rise to this claim largely occurred between 2021 and 2023, with the last alleged event possibly tethered to his arrest and potential prosecution being the withdrawal of the Notice of Appeal of

_____

[6] There is no separate cause of action for reckless infliction of emotional distress when intentional infliction of emotional distress is pled. "[R]eckless conduct is encompassed within the tort of intentional infliction of emotional distress and does not constitute a separate and distinct cause of action." *James v. Flynn*, 132 A.D.3d 1214, 1216 (3d Dep't 2015).

Judge Cocchiola's decision dismissing Plaintiff's case by D.A. Wetmore on or about February 20, 2024. *See* Compl. at ¶ 203. That event is beyond the one year limitation period. Plaintiffs' IIED claim is also untimely and must be dismissed.

### B. Negligent Infliction of Emotional Distress

Plaintiffs' negligent infliction of emotional distress (NIED) claim also fails as a matter of law. First, plaintiffs cannot overcome the County's governmental immunity. *See Haddock*, 75 N.Y.2d at 484 (1990). To the extent that it is pled that the County had any role in the events purportedly giving rise to plaintiffs' NIED claim—and the County submits that the complaint lacks these allegations—the County's role here, if any, would have been discretionary. The County has governmental immunity regarding plaintiffs' NIED claim and it must be dismissed.

Even if the County did not have governmental immunity—and, respectfully, the County submits that it does—the NIED claim still fails. A claim for negligent infliction of emotional distress cannot stand on generalized allegations of negligence owed to the public at large as "'[p]roof of negligence in the air, so to speak, will not do.'" *Sheila C. v. Povich*, 11 A.D.3d 120, 130 (1st Dept. 2004) (*quoting Palsgraf v. Long Is. R.R. Co.*, 248 NY 339, 341 (1928)). "A cause of action for negligent infliction of emotional distress generally requires [the] plaintiff 'to show a breach of a duty owed to [him or] her which unreasonably endangered [his or] her physical safety, or caused [him or] her to fear for [his or] her own safety.'" *A.M.P. v. Benjamin*, 201 A.D.3d 50, 57 (3d Dept. 2008) (citing *Schultes v. Kane*, 50 A.D.3d 1277, 1278 (3d Dept. 2008); *see also Brown v. New York City Health & Hosps. Corp.*, 225 A.D.2d 36, 44 (2d Dept. 1996) ("Plaintiff must establish that he was within the zone of danger and suffered emotional distress as a result of fearing for his own safety").

The complaint fails to allege any facts that establish that the County owed a duty to plaintiff Kweller, or any facts demonstrating that the County or caused him to fear for his own physical safety.  Plaintiffs also do not allege any contemporaneous physical danger or harm that would support a claim of emotional distress, as required under New York law.  The conclusory allegations, unsupported by any particularized facts, fall far short of and are insufficient to withstand a motion to dismiss.  *See generally James v. Flynn*, 132 A.D.3d 1214, 1216 (3d Dep't 2015).  Plaintiffs' NIED claim should be dismissed.

### VIII.  PLAINTIFF'S TENTH CAUSE OF ACTION FOR VIOLATION OF THE NEW YORK STATE CONSTITUTION SHOULD BE DISMISSED AGAINST THE COUNTY

Plaintiffs' tenth cause of action alleges that the County violated Article I §§ 6 and 12 of the New York State Constitution.  Article I §§ 6 and 12 are the State analog constitutional protections that afford citizens due process of law and the right to be free from unreasonable searches and seizures.

Courts in this Circuit have "uniformly held that no private right of action exists for violations of the New York State Constitution where the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution."  *Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018).  Additionally, New York courts have repeatedly found that Constitutional claims need not be recognized where it is "neither necessary nor appropriate to ensure the full realization of [a plaintiff s] rights" to do so because "the alleged wrongs could have been redressed by an alternative remedy, namely, timely interposed common-law tort claims." *See e.g. Lyles v. State*, 2 A.D.3d 694, 695–696 (2d Dept. 2003), *aff'd*, 3 N.Y.3d 396 (2004).

Plaintiffs' Article I § 6 claim is duplicative of the Section 1983 Fourteenth Amendment due process claim.  It bears noting that that claim was *not* brought against the County. The complaint's cursory recitation of this cause of action does not shed any light as to what plaintiffs

allege makes the County liable in one instance, but not the other. The County posits that it is due to a lack of basis for such claim, both under Section 1983 and New York state law. Plaintiffs' Article I § 12 claim duplicates the common law torts of false arrest and malicious prosecution. The County respectfully directs to Court to its arguments above related to that claim as to why it fails as a matter of law.

Because plaintiffs have an adequate alternative remedy at law for these claims, these claims should be dismissed. Alternatively, each of these state constitutional claims fails to state a cause of action for the reasons previously stated.

## IX.    PLAINTIFF'S ELEVENTH CAUSE OF ACTION SHOULD BE DISMISSED AGAINST THE COUNTY

With its eleventh cause of action, the complaint alleges that the County is liable under the doctrine of *respondeat superior* for the actions of its employees. This claim fails as well.

Although pled as a separate cause of action, in New York, "*[r]espondeat superior* is not an independent cause of action, but a theory of liability that must attach to an underlying claim." *Alexander v. Westbury Union Free School Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011) (*citing Harsco Corp. v. Segui*, 91 F.3d 337, 349 (2d Cir. 1996) (dismissing claims for liability under *respondeat superior* because plaintiff's claims had "no surviving theory of liability"). Plaintiffs allege that the "County is liable for their agents' state law torts of malicious prosecution, intentional, reckless, or negligent infliction of emotional distress, and negligence." Compl. at ¶ 331.

As mainly discussed above, each of these state law tort claims fails on its own. First, the malicious prosecution claim fails because plaintiffs fail to plead the requisite elements, including a showing of actual malice. The intentional/reckless negligent infliction claim is time-barred, if not outright barred also—even under a theory of *respondeat superior*—because of the policy bar

prohibiting the claim against municipalities.  The negligent infliction of emotional distress claim fails because plaintiffs fail to allege a breach of a duty owed to plaintiff Kweller that unreasonably endangered his physical safety.  Finally, plaintiffs have not pled a separate cause of action for negligence, so no *respondeat superior* liability can attach under that unpled theory.  Additionally, these tort claims are barred as against the County because it has government immunity and plaintiffs do not plead a special duty.  Plaintiffs' *respondeat superior* claim against the County must be dismissed.

## **CONCLUSION**

For the foregoing reasons, the County respectfully requests an order dismissing the complaint in its entirety with prejudice.

May 15, 2025                                   Respectfully submitted,

                                              The Wladis Law Firm, P.C.
                                              *s/Christopher J. Baiamonte*
                                              Christopher J. Baiamonte, Esq. (702528)
                                              *s/Timothy J. Lambrecht*
                                              Timothy J. Lambrecht (510390)
                                              *Attorneys for Defendant, The County of Broome*
                                              P.O. Box 245, Syracuse, NY 13214
                                              (315) 445-1700 (Office)
                                              E-mail:  cbaiamonte@wladislawfirm.com
                                                       tlambrecht@wladislawfirm.com

TO:  All Counsel of Record via CM/ECF

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2025, I caused the foregoing document to be filed electronically with the Clerk of the District Court, Northern District of New York, using the CM/ECF system, which sent automatic and contemporaneous notification of such filing to all counsel who have made an appearance in this action.

s/Timothy J. Lambrecht_____

Timothy J. Lambrecht, Esq. (510390)