UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────

LEOR KWELLER and ZOE LIBERMAN,　　　　　　Case No. 3:25-cv-01328-AJB-ML

　　　　　　　　Plaintiffs,　　　　　　　　Related: 3:24-cv-01325-AJB-ML
　　　　　　　　　　　　　　　　　　　　　　　　　　　　3:24-cv-01328-AJB-ML

　　- against -

THE COUNTY OF BROOME, THE CITY OF
BINGHAMTON, DISTRICT ATTORNEY MICHAEL
A. KORCHAK, CHIEF ASSISTANT DISTRICT
ATTORNEY MARK LOUGHRAN, ASSISTANT
DISTRICT ATTORNEY ALYSSA CONGDON,
ASSISTANT DISTRICT ATTORNEY AMANDA
CRONIN, DISTRICT ATTORNEY INVESTIGATOR
JEFF J. WAGNER, BINGHAMTON POLICE
DEPARTMENT CHIEF JOSEPH ZIKUSKI,
BINGHAMTON POLICE DEPARTMENT CAPTAIN
CORY MINOR, BINGHAMTON POLICE
DEPARTMENT INVESTIGATOR AMANDA
MILLER, all in their individual capacities, and JOHN
DOES 1-10, representing Broome County District
Attorney's Office and Police Department Employees
Whose Names Are Currently Unknown, HAILEY
DEMKOVICH, and SAMANTHA HERCEG,

　　　　　　　　Defendants.

────────────────────────────────────


## MEMORANDUM OF LAW IN SUPPORT OF THE CITY OF BINGHAMTON, JOSEPH ZIKUSKI, CAPTAIN CORY MINOR, INVESTIGATOR AMANDA MILLER, AND UNNAMED POLICE DEPARTMENT JOHN DOES #1-10'S MOTION TO DISMISS

WHITEMAN OSTERMAN & HANNA LLP
*Attorneys for the City and BPD Defendants*
One Commerce Plaza
Albany, New York 12260
Telephone: (518) 487-7600

*of Counsel:*
　William S. Nolan, Esq.
　Gabriella R. Levine, Esq.
　Christina F. Vitolo, Esq.

## <u>TABLE OF CONTENTS</u>

**Page:**

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 2

    The Reported Rape Incident ....................................................................................... 2

    The BPD's Investigation............................................................................................. 3

    The County Defendants' Decision to Charge ............................................................ 4

    The Text Messages and the Criminal Court's Denial of Plaintiff's Attempts to Obtain
       Them Pre-Arrest and Post-Arrest ......................................................................... 4

    This Proceeding ........................................................................................................ 5

ARGUMENT ................................................................................................................... 6

    I. PLAINTIFFS FAIL TO PLEAD A § 1983 MONELL CLAIM. ........................... 6

    II. PLAINTIFFS' § 1983 CLAIMS FAIL TO ADEQUATELY PLEAD PERSONAL
       INVOLVEMENT OF ANY BPD DEFENDANTS. ............................................ 9

    III. PLAINTIFFS' STATE LAW CLAIMS FAIL BECAUSE THE COMPLAINT
       FAILS TO PLEAD COMPLIANCE WITH THE NEW YORK'S NOTICE OF
       CLAIM REQUIREMENTS AND THE CLAIMS ARE TIME-BARRED .......... 15

    IV. THE COMPLAINT FAILS TO STATE ANY COGNIZABLE CLAIM AGAINST
       THE CITY OR BPD DEFENDANTS. ............................................................. 17

       1.   Plaintiffs' False Arrest Claims Are Time-Barred and Otherwise Fail........................... 17

       2.   Plaintiffs' Malicious Prosecution Claims Fail ............................................. 19

       3.   Plaintiffs' Federal Due Process Claims Fail ................................................ 23

            *A. Plaintiffs' Fair Trial Due Process Claim Fails*................................ 24

i

*B. Plaintiffs' Due Process Claim Based on the Alleged Failure to Conduct a Constitutionally Adequate Investigation Fails.* .............................................. 25

*C. Plaintiffs' Due Process Claim Premised on The Failure to Disclose Exculpatory Evidence Fails.* ................................................................................. 25

4. Plaintiffs' State Law Due Process Claim Fails. ............................................. 26

5. Plaintiffs' Failure to Intervene Claim Fails. ................................................. 27

6. Plaintiffs' Supervisory Liability Claim Fails. ............................................... 28

7. Plaintiffs' § 1983 Conspiracy Claim Fails. ................................................... 28

8. Plaintiffs' Intentional, Reckless, or Negligent Infliction of Emotional Distress Claims Fail. ........................................................................................ 30

9. Plaintiffs' Abuse of Process Claim Fails. ...................................................... 31

10. Plaintiffs' Respondeat Superior Claim Fails. ................................................ 33

11. State Law Claims Premised on Allegations of Negligence Are Barred By The Doctrine of Government Immunity and Plaintiffs' Failure To Plead A Special Duty. ................ 34

12. Plaintiff Zoe Liberman Lacks Standing and Fails to State any Cognizable Claim ........ 35

CONCLUSION ............................................................................................................ 35

## **TABLE OF AUTHORITIES**

**Page(s):**

### **State Cases**

A.M.P. v. Benjamin, 201 A.D.3d 50 (3d Dept. 2008) ................................. 31

Ametco, Ltd v. Beltchev, 5 A.D.2d 631 (1st Dept. 1958) ........................... 32

Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale

  Classroom Teachers Ass'n, 38 N.Y.2d 397 (1975) ................................ 32

Bell v. Miller, 164 A.D.3d 728 (2d Dept. 2018)) ..................................... 19

Brownell v. LeClaire, 96 A.D.3d 1336 (3d Dept. 2012) ............................ 19

Bumbury v. City of N.Y., 62 A.D. 3d 621 (1st Dept. 2009)......................... 19

Curiano v. Suozzi, 63 N.Y.2d 113 (1984) ............................................. 32

DiMeo v. Rotterdam Emergency Medical Services, Inc., 110 AD3d 1423  (3d Dept. 2013) ...... 34

Donas v. City of N.Y., 2008 WL 293038 (Sup. Ct. 2008) .......................... 26

Eckhardt v. City of White Plains, 87 A.D. 3d 1049 (2d Dept. 2011) ............. 34

Hernandez v. State, 228 AD2d 902 (3d Dept. 1996) ............................... 19

James v Flynn, 132 AD3d 1214 (3d Dept. 2015) .................................... 31

Lauer v. City of N.Y., 95 NY2d 95 (2000)............................................ 34

Lyles v. State, 2 A.D.3d 694 (2d Dept. 2003) ....................................... 26

Minasion v. Lubow, 49 A.D.3d 1033 (3d Dept. 2008).............................. 32

Mon v. City of N.Y. 78 N.Y.2d 309 (1991)............................................ 34

N.Y. State Properties, Inc. v. Clark, 183 A.D.2d 1003 (3d Dept. 1992) ......... 32

Reyes v. Faillace, 2014 NY Slip Op 30049(U) (Sup. Ct. 2014)................... 30

Roche v. Village of Tarrytown, 309 A.D.2d 842 (2d Dept. 2003) ............... 16

Seltzer v. Baye, 272 A.D.2d 263 (1st Dept. 2000) ........................................................ 30

Suarez v. Bakalchuk, 66 AD3d 419 (1st Dept. 2009)..................................................... 30

Valdez v. City of N.Y., 18 N.Y.3d 69 (2011) ................................................................. 34

Williams v. N.Y., 153 A.D.3d 1301 (2d Dept. 2017) ............................................... 17, 19

Williams v. Williams, 23 N.Y.2d 592 (1969) ................................................................. 32

## State Statutes

N.Y. GML § 50 .......................................................................................................... 15, 17

N.Y. GML § 50-i .......................................................................................................... 15

## Federal Cases

Agosto v. N. Y. C. Dept. of Educ., 982 F.3d 86 (2d Cir. 2020) ...................................... 6

Anderson v. Branen, 17 F.3d 552 (2d Cir. 1994) ......................................................... 27

Barone v. U.S., 2014 WL 4467780 (S.D.N.Y. Sept. 10, 2014) .................................... 20

Barzee v. Wison, 2024 WL 4751552 (N.D.N.Y. Nov. 12, 2024).................................. 10

Bertuglia v. City of N.Y., 839 F. Supp. 2d 703 (S.D.N.Y. 2012)................................. 29

Bovee v. Auburn Police Dept., 2024 WL 4600030 (N.D.N.Y. Oct. 29, 2024) .......... 8, 9

Brook v. Ruotolo, 2024 WL 3912831 (2d Cir. Aug. 23, 2024)..................................... 29

Bruno v. City of N.Y., 2019 WL 690340 (S.D.N.Y. Feb. 19, 2019)........................... 24

Bryant v. Ciminelli, 267 F. Supp. 3d 467 (W.D.N.Y. 2017)....................................... 34

Buari v. City of N.Y., 530 F. Supp. 3d 356 (S.D.N.Y. 2021)................................. 12, 27

Burroughs v. Mitchell, 325 F. Supp. 3d 249 (N.D.N.Y. 2018) .................................. 34

Castle Rock v. Gonzales, 545 U.S. 748 (2005) .......................................................... 34

City of Canton v. Harris, 489 U.S. 378 (1989) ............................................................ 7

iv

City of Okla. v. Tuttle, 471 U.S. 808 (1985) ............................................................. 7

Connick v. Thompson, 563 U.S. 51 (2011) ............................................................ 8, 9

Cooper Crouse-Hinds, LLC v. City of Syracuse, 2018 WL 840056

    (N.D.N.Y. Feb. 12, 2018) ............................................................................. 16

Cortlandt Street Recovery Corp. v. Hellas Telecommunications, S.a.r.l., 790 F.3d 411

    (2d. Cir. 2015) ............................................................................................. 35

Doe by and through Doe v. E. Irondequoit Cent. Sch. Dist., 2018 WL 2100605

    (W.D.N.Y. May 7, 2018) ............................................................................ 10

Dorsainvil v. City of N.Y., 2020 WL 6482348 (E.D.N.Y. Nov. 4, 2020) .................... 9

Downing v. Town of Cicero, 2025 WL 641570 (N.D.N.Y. Feb. 27, 2025) .......... 17, 23

Drawbridge v. Schenectady County Dept. of Social Services, 2024 WL 1152524

    (2d Cir. March 18, 2024) .............................................................................. 9

Dunlop v. City of N.Y., 2008 WL 1970002 (S.D.N.Y. May 6, 2008) ....................... 29

Dzwonczyk v. Syracuse City Police Dept., 710 F. Supp 2d 248 (N.D.N.Y. 2008) ..... 14

Everett v. Dean, 2021 WL 765762 (N.D.N.Y. Feb. 26, 2021) ................................. 24

Gallop v. Cheney, 642 F.3d 364 (2d Cir. 2011) ..................................................... 29

Gerasimou v. Cillis, 2022 WL 118748 (E.D.N.Y. 2022) ........................................ 27

Gil v. Cnty. of Suffolk, 590 F. Supp. 2d 360 (E.D.N.Y. 2008) ................................ 22

Guadagni v. N.Y.C. Trans. Auth., 2009 WL 1910953 (E.D.N.Y. 2009) ................... 17

Guerrero v. City of N.Y., 2013 WL 673872 (S.D.N.Y. Feb. 25, 2013) ....................... 7

Guillette v. Burlington Police Dept., 2022 WL 2208122 (2d Cir. June 21, 2022) ...... 10

Hardy v. New York City Health & Hosps. Corp., 164 F.3d 789 (2d Cir. 1999) .......... 15

Harrington v. Cnty. of Suffolk, 607 F.3d 31 (2d Cir. 2010) ......................... 12, 25, 34

Harris v. Tioga Cnty., 663 F. Supp 3d. 212 (N.D.N.Y. 2023) ..................................................... 20

Hernandez v. United States, 939 F.3d 191 (2d Cir. 2019) ......................................................... 9

Hicks v. Marchman, 719 Fed. App'x 61 (2d Cir. 2018) ............................................................ 12

Hubert v. Dept. of Corrections, 2018 WL 1582511 (D. Conn. March 30, 2018) ........................ 35

Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006) ........................................................................... 12

Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989) ................................................................. 7

Jorgensen v. Cnty. of Suffolk, 558 F. Supp 3d 51 (E.D.N.Y. 2021) ........................................... 19

Kee v. City of New York, 12 F.4th 150 (2d Cir. 2021) ............................................................... 19

Little v. Soulia, 2019 WL 13378467 (N.D.N.Y. Apr. 17, 2019) ................................................. 15

Longo v. Ortiz, 2016 WL 5376212 (S.D.N.Y. Sept. 26, 2016) ............................................. 23, 24

Lopez v. City of N.Y., 901 F.Supp. 684 (S.D.N.Y. 1995) ........................................................... 32

Lord v. Tashjian, 2023 WL 8105956 (N.D.N.Y. Nov. 13, 2023) ................................................ 11

MacLaren v. Chenango Cnty. Police, 2024 WL 4728884 (N.D.N.Y. Nov. 8, 2024) .................. 11

Mayzick v. Cnty. of Nassau, 32 F. Supp. 3d 399 (E.D.N.Y. 2014) ............................................ 18

McCaffrey v. City of N.Y., 2013 WL 494025 (S.D.N.Y. Feb. 7, 2013) ...................................... 25

McGee v. Dunn, 940 F. Supp. 2d 93 (S.D.N.Y. 2013) ............................................................... 22

Mitchell v. Victoria Home, 434 F. Supp. 2d 219 (S.D.N.Y. 2006) ............................................ 20

Monell v. Dept. of Soc. Serv. of the City of N. Y., 436 U.S. 658 (1978) ................................. 2, 6

Moran v. Town of Greenwich, 2025 WL 579995 (D. Conn. Feb. 21, 2025) ............................. 25

Morgan v. City of Utica, 2021 WL 2036680 (N.D.N.Y. May 21, 2021) ...................................... 7

Myers v. Moore, 326 F.R.D. 50 (S.D.N.Y. 2018) ...................................................................... 23

Naccarato v. Scarselli, 124 F. Supp. 2d 36 (N.D.N.Y. 2000) ................................................... 31

Nelson v. City of N.Y., 2019 WL 3779420 (S.D.N.Y. Aug. 9, 2019) ......................................... 20

Newton v. City of N.Y., 566 F. Supp. 2d 256 (S.D.N.Y. 2008)...................................... 25

Outlaw v. City of Hartford, 884 F.3d 351 (2d Cir. 2018)............................................ 9

Pinter v. City of N.Y., 2013 WL 5597545  (S.D.N.Y. Nov. 25, 2013) ......................... 32

Pritzker v. City of Hudson, 26 F. Supp. 2d 433 (N.D.N.Y. 1998)............................... 35

Rentas v. Ruffin, 816 F.3d 214 (2d Cir. 2016) ........................................................... 19

Rodriguez v. City of N.Y., 623 F. Supp. 3d 225 (S.D.N.Y. 2022)............................... 27

Roe v. City of Waterbury, 542 F.3d 31 (2d Cir. 2008).................................................. 6

Rys v. Grimm, 2021 WL 827671 (N.D.N.Y. March 4, 2021)...................................... 10

Salmon v. Blesser, 802 F.3d 249 (2d Cir. 2015) ....................................................... 30

Santiago v. City of Rome, 2025 WL 553347 (N.D.N.Y. Feb. 19, 2025) ..................... 33

Santiago v. Newburgh Enlarged City Sch. Dist., 434 F. Supp. 2d 193 (S.D.N.Y. 2006)....... 15, 17

Santos v. New York City, 847 F.Supp.2d 573 (S.D.N.Y. 2012) .................................... 8

Schwab v. Smalls, 435 Fed. App'x, 37 (2d Cir. 2011)................................................. 8

Schweitzer v. Brunstein, 2016 WL 4203482 (E.D.N.Y. Aug. 9, 2016) ....................... 25

Simms v. City of N.Y., 2011 WL 4543051 (E.D.N.Y. Sept. 28, 2011) ......................... 7

Simons v. N.Y., 472 F. Supp. 2d 253 (N.D.N.Y. 2007) ............................................... 32

Smulley v. Liberty Mut. Holding Co., 2023 WL 2494098 (2d Cir. 2023).................... 28

Solano v. N.Y, 2021 WL 4134793 (N.D.N.Y. Sept. 10, 2021) ................................... 11

Sotak v. Bertoni, 501 F. Supp. 3d 59 (N.D.N.Y. 2020).............................................. 21

Spence v. City of N.Y., 2022 WL 4537946 (S.D.N.Y. Sept. 28, 2022) ....................... 33

Stokes v. City of N.Y., 2007 WL 1300983 (E.D.N.Y. May 3, 2007)...................... 13, 25

Strong v. City of Syracuse, 2020 WL 137250 (N.D.N.Y. Jan. 13, 2020) .................... 7

Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020)............................................ 10, 28

Townes v. New York State Metropolitan Transp. Auth., 2011
   WL 4443604 (Sup. Ct. 2011) ........................................................ 26

Turczyn ex rel. McGregor v. City of Utica, 2014 WL 6685476
   (N.D.N.Y. Nov. 26, 2014) ............................................................. 8

Turley v. ISG Lackawanna, Inc., 774 F.3d 140 (2d Cir. 2014) ................... 30

Waddlington v. City of N.Y., 971 F. Supp. 2d 286 (E.D.N.Y. 2013) ........... 24

Ware for DP v. Doe, 2024 WL 3874773 (N.D.N.Y. Aug. 20, 2024) ........... 11

Watson v. U.S., 865 F.3d 123 (2d Cir. 2017) ........................................ 23

Watt v. City of N.Y., 740 F. Supp. 3d 212 (E.D.N.Y. 2024) ...................... 17

Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996) ....................................... 17

Wieder v. City of N.Y., 569 Fed. App'x 28 (2d Cir. 2014) ...................... 27

Williams v. Carpenter, 214 F. Supp. 3d 197 (W.D.N.Y. 2016) ............. 14, 23

Williams v. City of Syracuse, 2020 WL 3574643 (N.D.N.Y. July 1, 2020) ........ 21, 23, 24

Willis v. Rochester Police Dept., 2018 WL 4637378 (W.D.N.Y. Sept. 27, 2018) ........ 23

Wilson v. Cnty. of Onondaga, 2022 WL 3141764 (N.D.N.Y. Apr. 21, 2022) ........ 7, 8

Worrell v. City of N.Y., 2014 WL 1224257 (E.D.N.Y. March 24, 2014) ...................... 8

Wright v. Orleans Cnty., 2015 WL 5316410 (W.D.N.Y. Sept. 10, 2015) ............ 18, 24

Ying Li v. City of N.Y., 246 F. Supp. 3d 578 (E.D.N.Y. 2017) ................... 15

## PRELIMINARY STATEMENT

Defendants the City of Binghamton (the "City"), Binghamton Police Department Chief Joseph Zikuski ("Chief Zikuski"), Binghamton Police Department Captain Cory Minor ("Captain Minor"), Binghamton Police Department Investigator Amanda Miller ("Detective Miller") and unnamed police department John Does #1-10 (collectively, the "BPD Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs Leor Kweller ("Plaintiff" or "Mr. Kweller") and Zoe Liberman ("Ms. Liberman," or together with Plaintiff, "Plaintiffs") Complaint pursuant to Fed. R. Civ. Procedure 12(b)(1) and (6).

In November 2021, two young women, Defendants Hailey Demkovich and Samantha Herceg, filed reports alleging that Plaintiff, together with his brother, Yaron Kweller, and his brother's business partner, Jordan Rindgen, raped them. The Binghamton Police Department ("BPD") investigated the reports for several months. In February 2022, Defendant Assistant District Attorney Alyssa Congdon ("Defendant Congdon") decided to charge Plaintiff with Rape in the Third Degree in violation of New York Penal Law section 130.25(d). In March 2022, Defendant Congdon, along with her colleagues at the Broome County District Attorney's Office ("BCDAO"), Defendant Assistant District Attorney Mark Loughran ("Defendant Loughran"), and Defendant District Attorney Amanda Cronin ("Defendant Cronin"), presented the case to a Grand Jury, which retuned an indictment on several counts, and Mr. Kweller was arraigned. In May 2023, nearly two years before Plaintiffs filed this action, the indictment against Mr. Kweller was dismissed by a Broome County judge. Plaintiffs now allege that Mr. Kweller was unlawfully arrested, charged, indicted and prosecuted.

The Complaint against the City and the BPD Defendants should be dismissed because it: (1) fails to plead any facts sufficient to render the City liable under <u>Monell v. Dept. of Soc. Serv.</u>

of the City of N. Y., 436 U.S. 658, 694 (1978); (2) fails to allege that any of the BPD Defendants committed any specific acts that violated Plaintiffs' constitutional rights, and thus fails to establish the BPD Defendants' personal involvement under 42 U.S.C. § 1983; (3) fails to comply with New York's notice of claim requirements and contains several time-barred claims; and (4) otherwise fails to state a viable cause of action under federal or state law.

### STATEMENT OF FACTS[1]

### The Reported Rape Incident

On the night of November 26, 2021, Plaintiff was vising his brother, Yaron Kewller, in Binghamton, New York (Compl. ¶ 28). Beginning around 10 p.m. that night, Plaintiff, his brother and his brother's business partner Jordan Rindgen visited several bars and restaurants throughout the City, including three owned by Yaron Kweller and managed by Mr. Rindgen. (Compl., ¶ 29-31). In the early hours of the morning on November 27, 2021, Plaintiff, Yaron Kweller and Mr. Rindgen began drinking at a bar with Defendant Herceg (Id. ¶ 32). Around 2 a.m., the group went to an establishment owned by Yaron Kweller, where Mr. Rindgen procured more alcohol for the group, then went to Yaron Kweller business office, where they were joined by Defendant Demkovich (Id. ¶¶ 33-34, 39). Although the Complaint does not identify Defendants Herceg and Demkovich's age as of November 2021, it alleges that they were engaged in a group text message, the title of which referred to Union-Endicott High School (Id. ¶ 35).

Thereafter, all individuals left the office and returned to a bar owned by Yaron Kweller and managed by Mr. Rindgen, where more alcohol was consumed, and where Mr. Rindgen engaged in physical and sexual contact with Defendants Herceg and Demkovich (Id. ¶¶ 41, 43-

---

[1] The facts set forth herein are taken from the Complaint ("Compl.") and are assumed to be true solely for the purposes of this motion. Upon information and belief, many of the facts asserted in the Complaint are contradicted by sworn 50-H deposition testimony taken of Plaintiff, Yaron Kweller and Mr. Rindgen. Defendants accordingly reserve the right to contest all allegations should this motion be denied.

44). At some point, Defendant Herceg and Plaintiff kissed (Id. ¶ 59). After the bar closed around 3 a.m., the group returned to Yaron Kweller's office (Id. ¶ 46). Upon their return to the office, Mr. Rindgen and Defendants Herceg and Demkovich did cocaine, Defendant Herceg allegedly attempted to engaged in sexual contact with Plaintiff, and Yaron Kweller and Mr. Rindgen then engaged in physical and sexual contact with Defendants Herceg and Demkovich (Id. ¶¶ 51-54).

On November 27, 2021, Defendants Herceg and Demkovich reported to the New York State Police that they had been sexually assaulted (Id. ¶¶ 76). The report was then referred to the BPD for investigation (Id. ¶ 76-77).

<u>The BPD's Investigation</u>

The BPD's investigation commenced on November 28, 2021, when Detective Miller was assigned to investigate the allegations of sexual assault and interviewed Defendants Herceg and Demkovich (Id., ¶ 77). Detective Miller was supervised by Captain Minor who, in turn, reported to Chief Zikuski (Id.,). Defendants Herceg and Demokovich provided Detective Miller with photographs and text messages which confirmed they were with Plaintiff, Yaron Kweller, and Mr. Ringden the night of the reported assault (Id., ¶ 79).

During the BPD's investigation, Captain Minor performed routine investigatory tasks with Detective Miller (none of which are alleged to have caused any constitutional violations), including executing a duly issued search warrant at Yaron Kweller's office. (Id.. ¶¶ 77, 90, 105). The Complaint does not set forth any specific actions Chief Zikuski took; he is only alleged to have supervised Captain Minor (Id.,¶ 77). Like Captain Minor, Detective Miller is alleged to have engaged in routine and innocuous investigatory tasks, such as interviewing witnesses and the alleged victims, collecting evidence from the alleged victims, reviewing security camera footage, and executing a search warrant at Yaron Kweller's office (see, e.g., id. ¶¶ at 77-79, 88, 90).

3

<u>The County Defendants' Decision to Charge</u>

In or around December 2021, Defendant Congdon was given "ultimate decision-making authority over the investigation" (<u>Id.</u>, ¶ 125). In or around February 2022, Defendant Congdon "decided that Plaintiff, Yaron Kweller, and Jordan Rindgen should be arrested and charged in local court" (<u>Id.</u> ¶ 128). Plaintiff's attorney produced him to be charged and arrested on February 22, 2022 (<u>Id.</u>, ¶ 132). Plaintiff was charged with Rape in the Third Degree, a Class E felony (<u>Id.</u> ¶ 134). The County Defendants presented the case to the Grand Jury, which returned an indictment charging Plaintiff with Rape in the First Degree, a Class B Felony, and Sexual Abuse in the First Degree, a class E felony. (<u>Id.</u> ¶¶ 169-170). Plaintiff was arraigned and pled not guilty on March 31, 2022 (<u>Id.</u> ¶ 171). The Complaint does not allege Mr. Kweller was held in custody at any time, or required to attend any court proceedings following his arraignment.

<u>The Text Messages and the Criminal Court's Denial of Plaintiff's Attempts to<br>Obtain Them Pre-Arrest and Post-Arrest</u>

Defendants Demkovich and Herceg voluntarily provided certain photos and text messages to Detective Miller during the course of the BPD's investigation. (<u>Id.</u> ¶ 79). However, Defendants Demkovich and Herceg repeatedly denied the BPD's attempts to conduct a voluntary search of their cell phones (<u>Id.</u> ¶ 84). Plaintiff does not allege what probable cause, if any, existed for the BPD to execute a warrant to search the alleged victims' phones during its investigation.

On January 14, 2022, counsel for Defendants Demkovich and Herceg emailed Defendant Congdon and informed her that he had a hard copy folder printout (the "Saitta Folder") of text messages exchanged between the alleged victims (<u>Id.</u> ¶ 115). Plaintiff does not allege that anyone from the City or BPD was made aware of, or ever in possession of, the Saitta Folder. The County Defendants allegedly failed to expeditiously retrieve the Saitta Folder and review its contents (<u>Id.</u> ¶ 116-117). Defendant Congdon also allegedly directed Defendants Demkovich and Herceg to

destroy or delete "electronic data," including their social media accounts (Id. ¶¶ 72, 110). No similar allegation is made against the City or BPD Defendants.

At various times, Plaintiff filed judicial applications essentially seeking to compel the BPD and County Defendants to obtain a warrant to search the alleged victims' phones. Prior to his arrest, in or around December 2021, Plaintiff filed an order to show cause seeking, among other things, to compel the BPD and County Defendants to preserve and image electronic data from Defendants Demkovich and Herceg's cellphones (Id. ¶¶ 111). The order to show cause was denied (Id. ¶ 119). In March 2022, after the County Defendants decided to charge him, Plaintiff filed a duplicative motion, which was again denied (Id. ¶ 144(b)).

In or around July 2022, Plaintiff filed a third motion seeking to compel production of Defendants' Demkovich and Herceg's phones (Id. ¶ 177). In response, in or around August 2022, Defendant Congdon notified Plaintiff that the alleged victims agreed to the imaging of their phones, which was then conducted by the County Defendants and the BPD (Id. ¶ 178). The BPD properly provided a hard drive of the imaging to prosecutors (Id. ¶ 1). The imaging obtained from the alleged victims' phones (referred to as "Cellebrite Material") allegedly included exculpatory messages indicating that Defendant Demkovich advised Defendant Congdon that the sexual contact was consensual (Id. ¶ 186). On February 24, 2023, Plaintiff, along with Yaron Kweller and Mr. Rindgen, made an omnibus motion to dismiss all charges against them. (Id. ¶ 191).

This Proceeding

On May 31, 2023, Hon. Carol A. Cocchiola, dismissed the charges against Plaintiff (Id., ¶ 192). In her decision dismissing the charges, Judge Cocchiola pointed to specific improper actions taken by the Broome County District Attorney's Office (not the City or the BPD) during the Grand Jury process, including the issuance of erroneous instructions, and found that the prosecutions'

theory of the case was inconsistent with evidence presented to the Grand Jury (Id., ¶ 192). The charges against Yaron Kweller and Mr. Rindgen were not dismissed by Judge Cocchiola; they were tried together and acquitted of all charges following a jury trial in October 2023 (Id., ¶ 200). Prior to Yaron Kweller and Mr. Rindgen's trial, Defendants Korchak and Congdon filed a notice of appeal of Judge Cocchiola's decision dismissing the indictment, which appeal was never perfected and was dismissed on April 1, 2024 (Id., ¶¶ 196, 7). Plaintiffs commenced this action on March 18, 2025, nearly two years after the charges against Mr. Kweller were dismissed. For the reasons set forth below, all claims against the City and BPD Defendants should be dismissed.

## ARGUMENT

### I.  PLAINTIFFS FAIL TO PLEAD A § 1983 MONELL CLAIM.

Plaintiffs' third, sixth, and seventh causes of action seek to impose municipal liability on the City of Binghamton and certain BPD Defendants under § 1983. This Court should dismiss these claims because Plaintiff has failed to meet the stringent pleading requirements to state a claim of municipal liability under § 1983, as established in Monell v. Dept. of Soc. Serv. of the City of N. Y., 436 U.S. 658, 694 (1978).

In Monell, the Supreme Court rejected the assertion that a municipality can be vicariously liable "under § 1983 for an injury inflicted solely by its employees or agents," and held that municipal liability can only be imposed if the plaintiff demonstrates a constitutional injury resulting from the "execution of a government's policy or custom." Id.; see also Agosto v. N. Y. C. Dept. of Educ., 982 F.3d 86, 98 (2d Cir. 2020). The policy or custom must be "the moving force of the constitutional violation," not merely a contributing factor. Monell, 436 U.S. at 694; see Roe v. City of Waterbury, 542 F.3d 31, 37 (2d Cir. 2008). There also must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton

v. Harris, 489 U.S. 378, 385 (1989). The fact that a policy or custom might lead to police misconduct "is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the moving force behind a constitutional violation. There must at least be an affirmative link between, for example, the training inadequacies alleged, and the particular constitutional violation at issue." City of Okla. v. Tuttle, 471 U.S. 808, 824 n.8 (1985) (cleaned up); see also Morgan v. City of Utica, 2021 WL 2036680, at *2 (N.D.N.Y.  May 21, 2021); Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735-736 (1989). This standard requires far more than boilerplate allegations of a municipal custom or policy cobbled together with conclusory allegations of a constitutional injury. Strong v. City of Syracuse, 2020 WL 137250, at *3 (N.D.N.Y. Jan. 13, 2020); see also Guerrero v. City of N.Y., 2013 WL 673872, at *2 (S.D.N.Y. Feb. 25, 2013); Simms v. City of N.Y., 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) aff'd, 480 F. App'x 627 (2d Cir. 2012).

For example, in Wilson v. Cnty. of Onondaga, 2022 WL 3141764 (N.D.N.Y. Apr. 21, 2022), report & recommendation adopted, 2022 WL 2965584 (N.D.N.Y. July 27, 2022), the plaintiff alleged that certain law enforcement officials, prosecutors and forensic analysists fabricated evidence and framed him for murder. He asserted a § 1983 municipal liability claim against the City of Syracuse, alleging that it systematically failed to train its "police officers, detectives and investigators" to conduct "constitutionally adequate investigations," including following the "duties imposed by *Brady v. Maryland*." The plaintiff further alleged that these customs, practices, and policies were the moving force behind "the false and fabricated evidence that defendants relied upon in causing his arrest and prosecution." Id. at *7. This Court found that the plaintiff's complaint was insufficient to satisfy Monell because it did not include any supporting, non-conclusory factual allegations showing how the City's actions were taken pursuant to any policy or custom. Id. at *7; see also Turczyn ex rel. McGregor v. City of Utica, 2014 WL

6685476 (N.D.N.Y. Nov. 26, 2014); Santos v. New York City, 847 F.Supp.2d 573, 577 (S.D.N.Y. 2012); Worrell v. City of N.Y., 2014 WL 1224257, at *13 (E.D.N.Y. March 24, 2014).

The same result should be reached here. Plaintiffs' 72-page complaint contains only a handful of paragraphs even arguably devoted to alleging a Monell theory of liability against the City and BPD Defendants (Compl. ¶¶ 103(g), 276-295). In these paragraphs, Plaintiffs only broadly allege that BPD failed to train or supervise its members and had constitutionally infirm policies as to probable cause and as to "*Brady, Giglio*, and discovery obligations" generally (Id.. ¶ 103(g)). Although Plaintiffs also claim that individual BPD Defendants Chief Zikuski, Captain Minor, and Detective Miller "are policy makers, as that term is described in law, at BPD" (Id., ¶ 294), Plaintiffs make no effort to identify any specific act undertaken by these individuals pursuant to any final policymaking authority that caused the constitutional injuries alleged, much less tie their alleged policy making status to any actual policy, custom or practice of the City or BPD. This forecloses Plaintiffs' Monell claim under a final policymaker theory, even at the motion to dismiss stage. See Schwab v. Smalls, 435 Fed. App'x, 37, 40 (2d Cir. 2011) Accordingly, as in Wilson, Plaintiffs' failure to plead "any nonconclusory facts about the City" is fatal to their Monell claims. Wilson, 2022 WL 3141764, at *7.

Finally, as to Plaintiffs' allegation that BPD failed to adequately train defendants in investigating and charging crimes, a § 1983 claim against a municipality "is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). This is because the municipality's failure to train "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Id.; see also Bovee v. Auburn Police Dept., 2024 WL 4600030, at *4 (N.D.N.Y. Oct. 29, 2024), report & recommendation adopted, 2024 WL 4834214 (N.D.N.Y. Nov. 20, 2024). Therefore, "[a] pattern of similar

constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (quotation marks omitted). Where, however, a plaintiff premises his failure to train claim on a single incident and fails plead plausible, non-conclusory factual allegations that would establish that a municipal custom policy resulted in the alleged constitutional violations, the claim must be dismissed. See Drawbridge v. Schenectady County Dept. of Social Services, 2024 WL 1152524, at * 2 (2d Cir. March 18, 2024).

To the extent Plaintiffs premise their municipal liability claims on a failure to train theory, those claims fail because Plaintiffs fail to allege any specific or non-conclusory facts that would establish that any purported failure to train BPD officers amounted to deliberate indifference and Plaintiffs have not alleged any pattern of constitutional violations by untrained employees, nor any repeated complaints of the same. See, e.g., Bovee, 2024 WL 4600030, at *4; Outlaw v. City of Hartford, 884 F.3d 351, 373 (2d Cir. 2018); Dorsainvil v. City of N.Y., 2020 WL 6482348, at * 5 (E.D.N.Y. Nov. 4, 2020). Nor have Plaintiffs alleged that City policymakers failed to act in the face of other "actual or constructive notice." Hernandez v. United States, 939 F.3d 191, 207 (2d Cir. 2019) (quoting Connick, 563 U.S. at 61). Because Plaintiffs fail to adequately plead municipal liability under Monell, Plaintiffs' third, sixth, and seventh causes of action should be dismissed as against the City and the BPD Defendants.

## II.    PLAINTIFFS' § 1983 CLAIMS FAIL TO ADEQUATELY PLEAD PERSONAL INVOLVEMENT OF ANY BPD DEFENDANTS.

Plaintiffs allege various § 1983 claims against Chief Zikuski, Captain Minor and Detective Miller in their individual capacities, as well as ten unnamed John Doe Defendants representing BPD employees.[2] These claims fail because Plaintiffs have not plausibly pled any facts sufficient

---

[2] The Complaint does not specify whether the John Does are sued in their individual or official capacities. To the extent the John Does are sued in their official capacities, they are subject to the Monell standard of municipal

9

to establish the personal involvement of any BPD Defendants in the alleged underlying constitutional violations.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Barzee v. Wison</u>, 2024 WL 4751552, at *9 (N.D.N.Y. Nov. 12, 2024) (cleaned up). Plaintiff must plead and prove "that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." <u>Tangreti v. Bachmann</u>, 983 F.3d 609, 618 (2d Cir. 2020) (citation omitted) (emphasis added). Plaintiffs must establish the "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." <u>Rys v. Grimm</u>, 2021 WL 827671, at *8 (N.D.N.Y. March 4, 2021) "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue, because the elements of different constitutional violations vary." <u>Tangreti,</u> 983 F.3d at 618 (cleaned up).

Here, despite the volume of allegations in the Complaint, none of them adequately plead personal involvement of any BPD Defendant because they fail to specifically set forth "what each [BPD defendant] did [to the plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes" the defendant's actions violated. <u>See</u> <u>Doe by and through Doe v. E. Irondequoit Cent. Sch. Dist.</u>, 2018 WL 2100605, at *9 (W.D.N.Y. May 7, 2018).

The Complaint fails to allege that any specific BPD Defendant arrested or decided to arrest Mr. Kweller, charged or decided to charge him, fabricated evidence that led to his arrest or prosecution, participated in his prosecution, or withheld any specific exculpatory evidence. Plaintiffs instead lump their allegations against the BPD Defendants together in haphazard fashion,

---

liability (see <u>Guillette v. Burlington Police Dept</u>., 2022 WL 2208122, at *1 [2d Cir. June 21, 2022]), and Plaintiffs' claims against them fail for the reasons set out in Point I.

without identifying any nonconclusory or individual actions undertaken by them (see, e.g., Compl. ¶ 128 [alleging generally that "[t]he arrest was effectuated and processed by *members of BPD*"]; Id., ¶ 82 ["[a]ccording to text messages between Defendant Demkovich and her mother, Defendant Demkovich told *members of BPD* that she was questioning whether she was, in fact, raped, or if the physical or sexual contact was consensual"]; Id., ¶ 133 ["[d]espite there being no probable cause to charge Plaintiff, Defendant Congdon *met with BPD* on or about February 22, 2022 and decided with BPD to file criminal charges against Plaintiff"] [emphasis collectively added]). This type of group pleading is insufficient to adequately allege the personal involvement of any individual defendant in his or her personal capacity. Solano v. N.Y, 2021 WL 4134793, at *6 (N.D.N.Y. Sept. 10, 2021); Ware for DP v. Doe, 2024 WL 3874773, at *3 (N.D.N.Y. Aug. 20, 2024); Lord v. Tashjian, 2023 WL 8105956, at *3 (N.D.N.Y. Nov. 13, 2023); MacLaren v. Chenango Cnty. Police, 2024 WL 4728884, at *5 (N.D.N.Y. Nov. 8, 2024).

Plaintiffs notably fail to allege that any BPD Defendant was involved in the crux of Mr. Kweller's constitutional claims, which collectively center on purported exculpatory evidence contained in the Saitta Folder. According to the Complaint, the existence of the Saitta Folder was known to Defendant Congdon (and presumably, the BCDAO), as early as January 14, 2022, before Mr. Kweller was arrested, but its contents were not produced to his defense counsel until July 2023 (Compl., ¶¶ 115-117). However, there are no allegations in the Complaint to suggest that any named BPD Defendant had anything to do with any purported nondisclosure of the victims' text messages in the Saitta Folder or otherwise, much less any allegations that the BPD even knew of the Saitta Folder's existence before Mr. Kewller was arrested and charged. To the contrary, the Complaint makes clear that the victims' counsel made the Saitta Folder available to the County Defendants (*not the BPD or the City*) in January 2022 and that the County Defendants (*not the*

11

*BPD or the City*) allegedly failed to expeditiously retrieve it. Id. The Complaint goes on to acknowledge that the BPD properly turned over imaging of the victims' phones to prosecutors once it came into its possession. Plaintiffs allege that the victims repeatedly refused to permit the BPD access to their phones until August 2022, at which time the BPD imaged and turned over a hard drive of the phones to the County Defendants, who in turn produced the same to Mr. Kweller's counsel (Id., ¶¶ 84, 178-179, 181).

Instead of pleading specific unlawful acts undertaken by the named BPD Defendants, much of the Complaint is devoted to Plaintiff's general critique that the BPD should have done more in its investigation. Among other things, Plaintiffs allege that the BPD should have obtained a warrant for Mr. Kweller's DNA or a warrant to search the victims' phones (without alleging any facts suggesting that the BPD would have had probable cause to do so, and notwithstanding that the Complaint alleges, repeatedly, that the victims declined BPD's attempts to undertake a consensual search) (see, e.g., Compl., ¶¶ 84, 109). Plaintiffs' scattershot allegations that the BPD conducted a negligent or inadequate investigation are insufficient to establish the personal involvement of any named BPD Defendant.

Even assuming that any named BPD Defendant had probable cause to pursue additional investigatory means, "there is no constitutional right to an adequate investigation" and "[a] police officer's failure to pursue a particular investigative path is not a constitutional violation." Buari v. City of N.Y., 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021); Hicks v. Marchman, 719 Fed. App'x 61, 64 (2d Cir. 2018) (there is no "stand-alone fair trial claim based on officers' failure to conduct an adequate investigation"); Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006) (police officers are "not required to explore and eliminate every plausible claim of innocence before making an arrest"); Harrington v. Cnty. of Suffolk, 607 F.3d 31, 35 (2d Cir. 2010) (the significant level of

law enforcement discretion in investigating criminal acts precludes any "legitimate claim of entitlement" to a police investigation); Stokes v. City of N.Y., 2007 WL 1300983, at *6 (E.D.N.Y. May 3, 2007) ("[I]t is well-settled that there is no independent claim for a police officer's purported failure to investigate[.]").

With respect to Captain Minor and Chief Zikuski, the Complaint barely mentions them and contains no allegations that they individually engaged in unconstitutional conduct. The Complaint alleges only that Captain Minor "supervised Defendant Miller and reported to Defendant Joseph Zikuski" (Compl. ¶ 77), executed a search warrant with Detective Miller at an office location (Id., ¶ 90), attended a meeting with Detective Miller and certain County Defendants in which the investigation was discussed (Compl. ¶ 104), and "upon information and belief" participated in a discussion about subpoenaing the victims' cell phones (Compl. ¶ 105). The sole allegations against Chief Zikuski are that Captain Minor reported to him and that some unknown time he made a "statement that he had recommended against filing criminal charges" (Id. ¶¶ 77, 98). These allegations are insufficient to plausibly establish that either Captain Minor or Chief Zikuski individually violated the Constitution.

Plaintiffs fare no better with their claims against Detective Miller. The Complaint contains innocuous allegations that Detective Miller was "assigned to investigate" the allegations of sexual assault (Id., ¶ 77), interviewed the victims (Id., ¶ 78), collected certain photographs and text messages that the victims voluntarily turned over, none of which are alleged to contain exculpatory information (Id., ¶ 79, received security footage from Plaintiff's counsel, which is not alleged to contain exculpatory information and showed that Plaintiff was with the victims on the night they were allegedly assaulted (Id., ¶ 88), executed a duly-issued search warrant at an office (Id., ¶ 90), attended a meeting with County Defendants to discuss the investigation (Id., ¶ 106), and discussed

13

issuing a subpoena for the victim's cell phones (Id., ¶ 109). At most, these allegations demonstrate that Detective Miller participated in routine investigatory tasks. They fall well short of plausibly alleging that she engaged in unlawful conduct that violated Mr. Kweller's constitutional rights.

In the absence of any unlawful acts undertaken by Detective Miller, Plaintiff alleges that Defendant Demkovich told unidentified "members of the BPD" that she was questioning whether certain physical or sexual contact was consensual, and that Detective Miller failed to "record" that statement in a manner that could be disclosed to Plaintiff (Id., ¶ 82). The source of this allegation is hearsay in the form of a text message, the quoted contents of which have conspicuously been altered by Plaintiffs in their Complaint by inserting a bracketed reference to the BPD that does not exist in the original text: "December 28, 2021 – Defendant Demkovich to her mother: 'I told them [BPD] the next day I was questioning if what happened to me was actually rape . . .'" (see Compl., ¶ 74(w) (brackets inserted by Plaintiff in original quoted text).

Even with Plaintiff's manipulation of the text message's quoted language, it does not identify any named BPD Defendant, let alone Detective Miller, nor demonstrate that she committed any constitutional violation. The same is true even if this Court likewise credited Plaintiffs' allegation that Detective Miller failed to "record" Defendant Demkovich's purported statement, as that amounts at best to a claim of negligent police work, which is not a cognizable legal theory under § 1983. See, e.g., Dzwonczyk v. Syracuse City Police Dept., 710 F. Supp 2d 248, 261 (N.D.N.Y. 2008); Williams v. Carpenter, 214 F. Supp. 3d 197, 201 (W.D.N.Y. 2016). Indeed, Plaintiffs allege no facts to suggest that Detective Miller was motivated by bad faith or malice in failing to "record" this alleged statement (one they do not even claim was provided to her specifically), as Plaintiffs must to establish a viable claim against her for the various constitutional violations alleged. And, in any event, the mere fact that an alleged rape victim (who

14

was allegedly consuming alcohol and drugs throughout the incident [Compl. ¶ 38, ¶ 46]) questioned the underlying circumstances of a reported crime does not establish unconstitutional conduct on Detective Miller's behalf. Because the Complaint fails to adequately allege the personal involvement of any of the BPD Defendants,[3] all of Plaintiffs' federal claims against them in their individual capacities must be dismissed.

### III. PLAINTIFFS' STATE LAW CLAIMS FAIL BECAUSE THE COMPLAINT FAILS TO PLEAD COMPLIANCE WITH THE NEW YORK'S NOTICE OF CLAIM REQUIREMENTS AND THE CLAIMS ARE TIME-BARRED

Where, as here, a complaint filed in federal court contains state law claims, state notice of claim requirements apply to those claims. Hardy v. New York City Health & Hosps. Corp., 164 F.3d 789, 793 (2d Cir. 1999). Failure to comply with applicable notice of claim requirements requires dismissal for failure to state a cause of action, because such requirements are "absolute condition[s] precedent" to the filing of a lawsuit. Santiago v. Newburgh Enlarged City Sch. Dist., 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006). Under New York law, no tort action may be maintained against a city or its employees unless plaintiff serves notice of claim within ninety days after the claim arises and alleges that at least thirty days have passed since service of the notice of claim. See N.Y. GML § 50-i(1) and 50-e(a). Federal courts construe these provisions of New York law to require that plaintiff plead compliance with notice of claim requirement *in the complaint*. See Hardy, 164 F.3d at 793. In addition to the notice of claim requirements, the General Municipal Law sets forth a one year and ninety day statute of limitations for tort claims brought against a City or its employees. N.Y. GML § 50-i(1).

---

[3] To the extent Plaintiffs' general allegations referencing unnamed members of the BPD could be construed to allege claims against the John Doe BPD officers in their individual capacities, they are still insufficient because they fail to "allege facts which plausibly suggest both who was involved in the alleged constitutional violations and how they were involved." Little v. Soulia, 2019 WL 13378467, at *10 (N.D.N.Y. Apr. 17, 2019); see also Ying Li v. City of N.Y., 246 F. Supp. 3d 578, 598-600 (E.D.N.Y. 2017).

Here, Plaintiffs' Complaint contains no allegations that Plaintiffs complied with these requirements, requiring dismissal of Plaintiffs' state law claims for failure to state a claim. See Hardy, 164 F.3d at 794; see also Cooper Crouse-Hinds, LLC v. City of Syracuse, 2018 WL 840056, at * 8 (N.D.N.Y. Feb. 12, 2018) ("[C]ompliance with notice-of-claim statutes is a pleading requirement, not an affirmative defense"]); Roche v. Village of Tarrytown, 309 A.D.2d 842, 843 (2d Dept. 2003) (dismissing false arrest and unlawful imprisonment claims for failure to serve notice of claim within ninety days from plaintiff being released from confinement).

Further, as set forth more fully below, to the extent Plaintiffs' claims arise out of the City or BPD's alleged involvement with Mr. Kweller's arrest, those claims are time-barred because the latest they could have accrued is February 22, 2022, the date Mr. Kweller was arraigned and released from confinement (Compl. ¶ 132). Even if Plaintiffs' claims against the City and BPD Defendants could be construed to arise from the City or BPD Defendants' alleged involvement in Mr. Kweller's prosecution (which they should not, because, as set forth below, the Complaint makes clear that the County Defendants, not the City or BPD Defendants, prosecuted Mr. Kweller [see Roche, 309 A.D.2d at 843 (accrual of malicious prosecution claim against County could not be invoked to revive time-barred claims against Village, who arrested but did not prosecute plaintiff)]), those claims are still untimely because they would have accrued, at the latest, on May 31, 2023, when the charges against Mr. Kweller were dismissed (Compl. ¶ 192). Because Plaintiffs filed their complaint on March 18, 2025, more than one year and ninety days after these claims accrued, all of Plaintiffs' state law claims against the City and BPD Defendants are untimely. Plaintiffs cannot cure their pleading omission and failure to satisfy the notice of claim condition precedent because this Court cannot "authorize the late filing of a notice of claim," or "order that a late filed claim be deemed timely *nunc pro tunc*, where the statute of limitations . . . has expired."

Santiago, 434 F. Supp. 2d at 197.


IV.    **THE COMPLAINT FAILS TO STATE ANY COGNIZABLE CLAIM AGAINST THE CITY OR BPD DEFENDANTS.**

### 1. Plaintiffs' False Arrest Claims Are Time-Barred and Otherwise Fail

Plaintiffs' first and eighth causes of action assert claims for false arrest under § 1983 and New York law against BPD Defendants Captain Minor, Detective Miller and Chief Zikuski. "To state a claim for false arrest or false imprisonment under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." Guadagni v. N.Y.C. Trans. Auth., 2009 WL 1910953, at * 4 (E.D.N.Y. 2009) (citation omitted). A § 1983 claim for false arrest is "substantially the same" as a New York false arrest claim. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).

As an initial matter, Plaintiffs' claims for false arrest are time-barred. Under New York law, a false arrest claim against a city or its employees is subject to the one year and ninety-day statute of limitations for intentional torts prescribed by General Municipal Law § 50-i(1)(c), and accrues when plaintiff is released from confinement. Williams v. N.Y., 153 A.D.3d 1301, 1305 (2d Dept. 2017). A § 1983 claim for false arrest is subject to a three-year statute of limitations. Watt v. City of N.Y., 740 F. Supp. 3d 212, 225 (E.D.N.Y. 2024).  Where the complaint does not allege that plaintiff was held in custody at any time after arraignment, the claim accrues, at the latest, the date of arraignment. Downing v. Town of Cicero, 2025 WL 641570, at * 8 (N.D.N.Y. Feb. 27, 2025); see also Watt, 740 F. Supp. 3d at 225. Here, the Complaint contains no factual allegations indicating that Mr. Kweller was held in pretrial detention or otherwise subject to any confinement following his arraignment. Therefore, Plaintiffs' claim for false arrest accrued on

February 22, 2022, the date Mr. Kweller's counsel produced him to be arrested and he was arraigned (Compl., ¶ 132). Because Plaintiffs filed the Complaint on March 18, 2025—more than three years later— their state and federal claims for false arrest are time-barred.

Even if the claims were timely (which they are not), they would still fail because the Complaint includes "[n]o facts regarding how the arrest took place are provided. The few allegations to be found in the Complaint are short, conclusory, and almost entirely devoid of appreciable factual content." Mayzick v. Cnty. of Nassau, 32 F. Supp. 3d 399, 402 (E.D.N.Y. 2014) (dismissing false arrest claim). Plaintiffs do not identify any BPD Defendant who played a role in Mr. Kweller's arrest or the decision to arrest him. Instead, Plaintiffs alleges that in or around February 2022, *Defendant Congdon* – and not a member of the BPD – "decided that Plaintiff, Yaron Kweller, and Jordan Rindgen should be arrested and charged in local court" and that "[t]he arrest was effectuated and processed by members of BPD" (Compl. ¶ 128).

Even if Plaintiffs' false arrest claims were timely and supported by sufficient factual detail (which they are not), they are barred by the indictment returned by the grand jury, which "establishes the requisite probable cause to extinguish" Plaintiffs' state and federal claims based on false arrest. Wright v. Orleans Cnty., 2015 WL 5316410, at *11 (W.D.N.Y. Sept. 10, 2015), report & recommendation adopted, 2015 WL 13660397 (W.D.N.Y. Oct. 27, 2015). Plaintiffs' Complaint utterly fails to allege any facts tending to establish that the indictment was secured through bad faith or perjury—resulting from any BPD Defendants' conduct— in a manner that could rebut the "presumption of probable cause" that arises from the indictment. Id.

Finally, and to the extent that Plaintiffs' state or federal false arrest claims are premised on any allegations that the BPD failed to pursue additional investigative measures, such as securing warrants for Plaintiff's DNA or the victims' phones, Plaintiff has no cognizable § 1983 or state

common law claim for a negligent investigation. See, e.g., Hernandez v. State, 228 AD2d 902 (3d Dept. 1996) ("New York does not recognize an action alleging negligent investigation or prosecution of a crime, as the police are not obligated to follow every lead that may yield evidence beneficial to the accused"); Bell v. Miller, 164 A.D.3d 728, 729 (2d Dept. 2018), lv denied 32 N.Y.3d 911 (2018); Jorgensen v. Cnty. of Suffolk, 558 F. Supp 3d 51, 65 (E.D.N.Y. 2021).

### 2. Plaintiffs' Malicious Prosecution Claims Fail

Plaintiffs' first and eighth causes of action are also premised on state and federal theories of malicious prosecution. "To prevail on a malicious prosecution claim under New York law and federal law, a plaintiff must show: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." Kee v. City of New York, 12 F.4th 150, 161-62 (2d Cir. 2021) (internal citations and punctuation omitted). A malicious prosecution claim brought under §1983 also requires "a sufficient post-arraignment liberty restraint." Id. at 162 (cleaned up); Rentas v. Ruffin, 816 F.3d 214, 220 (2d Cir. 2016). The Complaint fails to satisfy these elements.

As an initial matter, Plaintiffs' state law claim for malicious prosecution is time-barred. Like the state law false arrest claim, the statute of limitations for Plaintiffs' malicious prosecution claim is one year and ninety days. See, e.g., Brownell v. LeClaire, 96 A.D.3d 1336, 1337 (3d Dept. 2012). A malicious prosecution claim accrues when there is a "favorable termination of the underlying proceeding." Williams, 153 A.D.3d at 1305. Dismissal of an indictment constitutes a favorable termination triggering the statute of limitations for a malicious prosecution claim. Bumbury v. City of N.Y., 62 A.D. 3d 621, 621 (1st Dept. 2009) (malicious prosecution claim accrued when indictment against plaintiff was dismissed, rendering notice of claim served more

19

than two years later and action filed three years later untimely); see also Harris v. Tioga Cnty., 663 F. Supp 3d. 212, 234-235 (N.D.N.Y. 2023). Here, Plaintiffs' claim for malicious prosecution accrued on May 30, 2023, when the charges against Mr. Kweller were dismissed (Compl., ¶ 4). Because Plaintiffs' commenced this action on March 18, 2025—more than one year and ninety days later—their state law claim for malicious prosecution is time-barred.

In any event, the Complaint fails to state a claim for malicious prosecution under federal or state law. First, the Complaint fails to adequately allege that any BPD Defendant initiated the prosecution against Mr. Kweller. "An arresting officer may be held liable for malicious prosecution if he or she played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Barone v. U.S., 2014 WL 4467780, at *17 (S.D.N.Y. Sept. 10, 2014) (cleaned up). A police officer may initiate a proceeding "by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints." Mitchell v. Victoria Home, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006); see also Nelson v. City of N.Y., 2019 WL 3779420, at *11 (S.D.N.Y. Aug. 9, 2019) (citation omitted). "In addition, an officer will be liable for malicious prosecution if he or she creates false information likely to influence a jury's decision and forwards that information to prosecutors, or ... withholds relevant and material information from the prosecutor." Barone, 2014 WL 4467780, at *17.

Here, Plaintiffs' malicious prosecution claims fail because the Complaint "contains no factual allegations to support the inference that [the BPD Defendants] played an active role in initiating Plaintiff's prosecution." Ying Li, 246 F. Supp. 3d. Rather, the allegations in the Complaint make clear that it was the County Defendants, not the BPD, who initiated the prosecution. The Complaint alleges that: (1) in December 2021, months before Mr. Kweller was arrested and charged with any crime, the County Defendants "ceded ultimate decision-making

over the investigation to Defendant Congdon (Compl. ¶ 125); (2) Defendant Congdon (not any BPD Defendant) "decided" that Mr. Kweller should be arrested and charged (Id., ¶ 128); (3) in March 2022, months after she (not any BPD Defendant) was allegedly made aware of the existence of the Saitta Folder, but without having reviewed its contents, "Defendant Congdon instead decided to present the case to the grand jury" (Id., ¶ 167);  (4) Defendants Loughran, Cronin, and Congdon (not any BPD Defendant) presented the case to the Grand Jury, and, in so doing, allegedly withheld exculpatory information from the jurors (Id., ¶ 168); and (5) when Mr. Kweller was arraigned on March 31, 2022, Defendants Congdon and Cronin, under the supervision of Defendants Korchak and Loughran, filed the requisite Certificate of Compliance (Id., ¶ 172-173).

Plaintiffs' general allegations of wrongdoing during the investigation and prosecution do not salvage their claim as against the BPD Defendants. While there are conclusory allegations that various defendants purportedly "fabricated" evidence, the Complaint offers no corroborating factual detail explaining how or what evidence was fabricated (Compl. ¶¶ 222, 246); see Williams v. City of Syracuse, 2020 WL 3574643, at *2 (N.D.N.Y. July 1, 2020) (dismissing malicious prosecution claim where "there are no allegations concerning the form or substance of the information claimed to have been fabricated"); see also Sotak v. Bertoni, 501 F. Supp. 3d 59, 84 (N.D.N.Y. 2020). Nor is there any allegation that BPD Defendants withheld material evidence from prosecutors. Plaintiffs do not allege that the BPD was ever in possession or made aware of the Saitta Folder with allegedly exculpatory text messages from Defendants Demkovich and Herceg. Notably, Defendants Demkovich and Herceg refused to consent to BPD's request to access to their electronic data until after charges were brought. Once imaging was conducted on the victims' phones, the Complaint makes clear BPD produced that imaging to prosecutors (Compl., ¶¶ 178-179). The Complaint's generalized allegation that "[a]ccording to text messages

between Defendant Demkovich and her mother, Defendant Demkovich told members of BPD that she was questioning whether she was, in fact, raped, or if the physical or sexual contact was consensual" (Compl. ¶ 82) likewise fails to adequately allege that any *BPD Defendant* withheld exculpatory evidence (compare with Id., ¶¶ 163 [alleging that the County Defendants failed to "recognize[] the exculpatory nature of this information and did not disclose it to the defense]; 168 [alleging that "Defendants Congdon and Cronin kept exculpatory information from the Grand Jury"]; 172-173 [alleging that Defendants Congdon and Cronin caused Mr. Kweller's arraignment without having obtained certain exculpatory and impeachment evidence]).

Next, Plaintiffs' malicious prosecution claims fail because the Complaint fails to allege the absence of probable cause of actual malice. A grand jury's indictment creates a presumption of probable cause that can only be rebutted by a showing that the indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Savino, 331 F.3d at 72 (citations and quotation marks omitted). "[I]t is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment," and that burden cannot be met by "mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." Id. at 73 (cleaned up). "To prove actual malice, the plaintiff must show that the defendant commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." McGee v. Dunn, 940 F. Supp. 2d 93, 102 (S.D.N.Y. 2013) (cleaned up). But the alleged failure by police to "conduct further investigation or apply all procedures that could have been followed does not amount to fraud, bad faith or the suppression of evidence." Gil v. Cnty. of Suffolk, 590 F. Supp. 2d 360, 370 (E.D.N.Y. 2008). Where a plaintiff alleges only "poor police work" or negligence in conducting an investigation, "[t]hat is not enough to support a malicious-prosecution

22

claim, or a § 1983 claim in general." <u>Williams</u>, 214 F. Supp. 3d at 201.

Here, the Complaint's conclusory allegations fail to rebut the presumption of probable cause, as they do not plausibly suggest that the indictment against Plaintiff was procured through police misconduct or bad faith. Even construed liberally, the claims against the BPD Defendants allege only negligence or poor police work, which is insufficient for purposes of a malicious prosecution claim. <u>See</u>, <u>e.g.</u>, <u>Watson v. U.S.</u>, 865 F.3d 123, 134 (2d Cir. 2017) (malicious prosecution claim cannot be based on "series of negligent acts by government officials"). While the Complaint also alleges in conclusory fashion that the BPD Defendants fabricated evidence and withheld exculpatory evidence, Plaintiffs fail, as noted above, to meet basic pleading standards by corroborating these serious allegations with any supporting facts, such as what evidence was fabricated or withheld, and who specifically from the BPD engaged in such misconduct, warranting dismissal of their claims. <u>See</u> <u>Williams</u>, 2020 WL 3574643, at *2; <u>Myers v. Moore</u>, 326 F.R.D. 50, 60 (S.D.N.Y. 2018); <u>Willis v. Rochester Police Dept.</u>, 2018 WL 4637378, at *6 (W.D.N.Y. Sept. 27, 2018); <u>Longo v. Ortiz</u>, 2016 WL 5376212, at *4 (S.D.N.Y. Sept. 26, 2016).

Finally, Plaintiffs' malicious prosecution claims fail because the Complaint fails to allege that Mr. Kweller "was restricted in any manner beyond being required to attend the arraignment, [Plaintiffs] have not alleged a sufficiently unreasonable deprivation of [Mr. Kweller's liberty] to state a claim for malicious prosecution." <u>Downing</u>, 2025 WL 641570, at *13. Accordingly, Plaintiffs' claims for malicious prosecution should be dismissed for failure to state a claim.

### 3. Plaintiffs' Federal Due Process Claims Fail

Plaintiffs' second cause of action alleges that Captain Minor and Detective Miller violated Mr. Kweller's federal due process rights based on three theories: denial of a fair trial by fabricating evidence, withholding exculpatory and impeachment evidence, and failing to conduct a

constitutionally adequate investigation. None of these three theories is supported by sufficient allegations to state a claim.

### A. Plaintiffs' Fair Trial Due Process Claim Fails.

To succeed on a § 1983 claim alleging a violation of the fair trial right, a plaintiff must prove that "an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." Everett v. Dean, 2021 WL 765762, at *4 (N.D.N.Y. Feb. 26, 2021), report & recommendation adopted, 2021 WL 3046801 (N.D.N.Y. March 30, 2021) (citations omitted).

Plaintiffs generally allege that multiple "Defendants," purportedly including Captain Minor and Detective Miller, violated Mr. Kweller's due process rights by "fabricating inculpatory evidence" in support of his fair trial claim (Compl. ¶ 231). The Complaint, however, does not provide any factual detail and context to support these allegations, which are simply "boilerplate." See Williams, 2020 WL 3574643, at *2 (dismissing the plaintiffs' fabrication of evidence claim because it contained "boilerplate allegations" and "provide[d] no factual context to support a fair trial claim."); Bruno v. City of N.Y., 2019 WL 690340, at *11, n. 9 (S.D.N.Y. Feb. 19, 2019); Wright, 2015 WL 5316410, at *13 (W.D.N.Y. 2015) ("[T]he failure to specify what constituted the allegedly falsified information is fatal to Plaintiff's fair trial claim."); Waddlington v. City of N.Y., 971 F. Supp. 2d 286, 297 (E.D.N.Y. 2013); see also Longo, 2016 WL 5376212, at *4. Further, Plaintiff's allegations that the BPD Defendants failed to secure a buccal swap or Defendants Herceg and Demkovich's cellphone records speak more to failing to secure potentially real evidence, not the fabrication of evidence, and thus cannot form the basis of a fair trial due process claim. See Moran v. Town of Greenwich, 2025 WL 579995, at *8 (D. Conn. Feb. 21,

2025) ("Failing to adequately investigate or provide exculpatory evidence is legally distinct from fabricating or falsifying evidence").

       B.    *Plaintiffs' Due Process Claim Based on the Alleged Failure to Conduct a Constitutionally Adequate Investigation Fails.*

Plaintiffs next attempts to make out a due process violation based on allegations that the BPD failed to conduct a constitutionally adequate investigation (Compl. ¶ 230). But again, "there is no constitutional right to an adequate investigation." <u>Newton v. City of N.Y.</u>, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008) (citation omitted); <u>see also</u> <u>Harrington</u>, 607 F.3d at 35. Indeed, "[a] police officer's failure to pursue a particular investigative path is not a constitutional violation." <u>Schweitzer v. Brunstein</u>, 2016 WL 4203482, at *2 (E.D.N.Y. Aug. 9, 2016) (collecting cases); <u>McCaffrey v. City of N.Y.</u>, 2013 WL 494025, at *5 (S.D.N.Y. Feb. 7, 2013) (same); <u>Stokes</u>, 2007 WL 1300983, at *6 (same). Thus, even assuming the BPD Defendants failed to conduct an adequate investigation because they did not pursue warrants for Mr. Kweller's DNA or the victims' cell phone records, such failure cannot constitute the basis of a due process claim against them.

       C. *Plaintiffs' Due Process Claim Premised on The Failure to Disclose Exculpatory Evidence Fails.*

Plaintiffs allege that "Defendants," purportedly including Captain Minor and Detective Miller, violated Mr. Kweller's right to due process by "withholding material exculpatory and impeachment evidence" and "directing the destruction of material and impeachment evidence in order to hide it from" from his counsel and the Court (Compl. ¶ 231-232). This extraordinary assertion, contained only in Plaintiffs' recitation of their second cause of action, finds no support in the actual factual allegations contained in the Complaint. As set forth at length above, to the extent the purported exculpatory and impeachment evidence is the text messages or other data contained in the Saitta Folder, the Complaint does not allege that any BPD Defendant was aware

of its existence until well after Mr. Kweller was arrested and arraigned (by which point the BCDAO Defendants are alleged to have taken over the investigation, presented the case to Grand Jury, and overseen the prosecution) so it is not possible for the BPD Defendants to have withheld it. To the contrary, the Complaint squarely alleges that the BPD turned over extractions from the victims' cell phones in November 2022, after Defendants Herceg and Demkovich finally gave BPD access to their phones (Compl., ¶ 178). Similarly, to the extent the allegedly exculpatory evidence is DNA test results, such evidence was not available to the BPD Defendants (and thus could not have been and was not withheld by them), until June 2022, when Mr. Kweller consented to have his DNA obtained (Compl,. ¶ 175). With respect to Plaintiffs' claims that any Defendants destroyed evidence, the only remotely relevant allegations in the Complaint are that Defendant Herceg testified at Yaron Kweller and Mr. Rindgen's trial that Defendant Congdon (not any BPD Defendant) instructed her to destroy her electronic data and delete her social media accounts (Compl. ¶¶ 72, 110). Accordingly, Plaintiffs' federal due process claims fail.

### 4. Plaintiffs' State Law Due Process Claim Fails.

Plaintiffs' tenth cause of action alleges that Defendants violated Article I § 6 and Article I § 12 of the New York State Constitution.

New York courts have repeatedly found that Constitutional claims need not be recognized where it is "neither necessary nor appropriate to ensure the full realization of [plaintiff s] rights" to do so because "the alleged wrongs could have been redressed by an alternative remedy, namely, timely interposed common-law tort claims." See Lyles v. State, 2 A.D.3d 694, 695-696 (2d Dept. 2003), aff'd, 3 NY3d 396 (2004); Donas v. City of N.Y., 2008 WL 293038 (Sup. Ct. 2008), aff'd, 62 A.D.3d 504 (1st Dept. 2009); Townes v. New York State Metropolitan Transp. Auth., 2011 WL 4443604 (Sup. Ct. 2011); see also Rodriguez v. City of N.Y., 623 F. Supp. 3d 225, 260

(S.D.N.Y. 2022). The same is true where "'the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution.'" <u>Buari</u>, 530 F.Supp.3d at 409-10 (quoting <u>Alwan v. City of New York</u>, 311 F. Supp. 3d 570, 586 [E.D.N.Y. 2018] [citing cases]).

Plaintiffs' Article I § 6 claim is duplicative of the §1983 Fourteenth Amendment due process claim, which Plaintiffs allege in the second cause of action in the Complaint. Plaintiffs' Article I § 12 claim duplicates the common law tort of false arrest, which Plaintiff alleges in the eighth cause of action in the Complaint. Because Plaintiffs have an adequate alternative remedy at law for these claims, these claims should be dismissed. Alternatively, each of these state constitutional claims fails to state a cause of action for the reasons stated above with respect to Plaintiffs' § 1983 due process and false arrest claims.

### 5. Plaintiffs' Failure to Intervene Claim Fails.

Plaintiffs' third cause of action broadly alleges that the City, Chief Zikuski, Captain Minor and Detective Miller failed to intervene in to prevent Mr. Kweller's false arrest, malicious prosecution, and deprivation of liberty without due process (i.e. Plaintiffs' other claims). "A[n] ... officer may be liable for failure to intervene under § 1983 where '(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.'" <u>Gerasimou v. Cillis</u>, 2022 WL 118748, *5 (E.D.N.Y. 2022) (citation omitted).  A plaintiff cannot succeed on a claim for failure to intervene under § 1983 when there is no underlying constitutional violation. <u>Wieder v. City of N.Y.</u>, 569 Fed. App'x 28, 30 (2d Cir. 2014) (summary order). "[F]or liability to attach" for failure to intervene, "there must have been a realistic opportunity to intervene to prevent the harm from occurring." <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994).

27

Here, as set forth at length above, the Complaint fails to adequately allege that the City or BPD Defendants committed any underlying constitutional violation to support Plaintiff's failure to intervene claim. Plaintiff also neglects to even plead the elements (or the facts) necessary to state a failure to intervene claim against any the City or any BPD Defendant. Thus, Plaintiffs' claim for failure to intervene should be dismissed.

### 6.  Plaintiffs' Supervisory Liability Claim Fails.

Plaintiffs' fourth cause of action  alleges that Captain Minor and Chief Zikuski are liable as supervisors, without clearly specifying which constitutional violations they are liable for. There is no longer any special rule for supervisory liability in the Second Circuit. See Tangreti, 983 F.3d at 614-19. Instead, a plaintiff must plead that each supervisor violated the Constitution directly, through their own actions. Id. at 618. For the reasons set forth in Point II supra, Plaintiff fails to plead any facts sufficient to allege that Defendants Minor and Zikuski were personally involved in any of the alleged constitutional violations in this case. After Tangreti, it is no longer sufficient for Plaintiffs to allege that Captain Minor and Chief Zikuski failed to adequately supervise other police officers as a basis to establish their personal involvement. Tangreti, 983 F.3d at 619. Accordingly, this claim fails and should be dismissed.

### 7.  Plaintiffs' § 1983 Conspiracy Claim Fails.

Plaintiffs' seventh cause of action alleges a § 1983 conspiracy against all Defendants. "In order to survive a motion to dismiss on [a] §1983 conspiracy claim, [a Plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Smulley v. Liberty Mut. Holding Co., 2023 WL 2494098, at *2 (2d Cir. 2023) (citation omitted). "It is well settled that claims of conspiracy containing only conclusory, vague, or general

allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (cleaned up).

Plaintiffs fail to allege any facts to satisfy this standard. There are no facts specifically as to which individuals from the BPD or the City were involved in any purported conspiracy, nor any to suggest that anyone from the BPD or the City had a meeting of the minds with any other party to cause Plaintiffs an unconstitutional injury. See Brook v. Ruotolo, 2024 WL 3912831, at *3 (2d Cir. Aug. 23, 2024) (citing Gallop, 642 F.3d at 369). Plaintiffs' conclusory allegation that all Defendants "agreed" to "act in concert" is insufficient. Bertuglia v. City of N.Y., 839 F. Supp. 2d 703, 728 (S.D.N.Y. 2012). For the reasons set forth in preceding sections, the Complaint also fails to allege that the City or BPD Defendants were personally involved in any of the purported overt acts alleged to support this claim (Compl. ¶ 298). Even if such facts were alleged, Plaintiffs have not stated a viable underlying constitutional violation, a necessary predicate to stating a § 1983 conspiracy claim. Bertuglia, 839 F. Supp. 2d at 728.

To the extent Plaintiffs allege that a conspiracy existed within the BPD or the City, "[t]he intracorporate conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." Dunlop v. City of N.Y., 2008 WL 1970002, at *9 (S.D.N.Y. May 6, 2008) (cleaned up). This "doctrine bars conspiracy claims alleging concerted action by employees and/or the heads of various departments within a single municipal entity," including the City as an entity and its police department, "where the complaint fails to allege that the various entities were effectively acting as separate entities in carrying out the alleged conspiracy." Id. (citations omitted). Thus, the intracorporate conspiracy doctrine applies when a complaint "clearly depict[s]" a conspiracy "as the product of a single corporation acting

exclusively through its own directors, officers, and employees." Id. at *10 (cleaned up).

Given the foregoing, because Plaintiffs have not made any non-conclusory allegations sufficient to support a plausible claim that any of these parties acted in concert or had an agreement to violate Mr. Kweller's rights, Plaintiffs' conspiracy claims should be dismissed.

**8. Plaintiffs' Intentional, Reckless, or Negligent Infliction of Emotional Distress Claims Fail.**

Plaintiffs' ninth cause of action alleges that all Defendants are liable for intentional, reckless or negligent infliction of emotional distress under New York law.

An intentional infliction of emotional distress claim is "highly disfavored" under New York law and "is to be invoked only as a last resort." Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014) (citations omitted). Moreover, "the New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct 'falls well within the ambit of other traditional tort liability.'" Salmon v. Blesser, 802 F.3d 249, 256 (2d Cir. 2015) (quoting Fischer v. Maloney, 43 N.Y.2d 553, 557-58 [1978]). Indeed, "[a]ll four Appellate Division courts [in New York] have answered the question and held that it cannot." Id. The standard in New York for the intentional infliction of emotional distress is quite high. Reyes v. Faillace, 2014 NY Slip Op 30049(U), ¶ 17 (Sup. Ct. 2014). "[A] plaintiff must establish: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Suarez v. Bakalchuk, 66 AD3d 419, 419 (1st Dept. 2009); Seltzer v. Baye, 272 A.D.2d 263, 264-265 (1st Dept. 2000).

Here, Plaintiffs' conclusory allegations, even if found true, are not sufficiently outrageous in character, and so extreme in degree, to warrant such a finding. For example, Plaintiffs have made no allegations showing a longstanding campaign of deliberate, systematic and malicious

30

harassment of the Mr. Kweller on the part of the City, or the individual police officer Defendants. Therefore, Plaintiffs' cause of action for intentional infliction of emotional distress should be dismissed.

"A cause of action for negligent infliction of emotional distress generally requires [the] plaintiff to show a breach of a duty owed to [him or] her which unreasonably endangered [his or] her physical safety, or caused [him or] her to fear for [his or] her own safety" <u>A.M.P. v. Benjamin</u>, 201 A.D.3d 50, 57 (3d Dept. 2008) (cleaned up).

Here, Plaintiffs do not include any particularized allegations of negligence in either their ninth cause of action or the remainder of the Complaint. The allegations made in support of Plaintiffs' ninth cause of action are conclusory and are simply insufficient to withstand a motion to dismiss. <u>See</u> <u>generally</u>, <u>James v Flynn</u>, 132 AD3d 1214, 1216 (3d Dept. 2015). Accordingly, Plaintiffs' negligent infliction of emotional distress claim should be dismissed.

Finally, Plaintiffs' claims for emotional distress, whether plead under a theory of intent or negligence, fail and must be dismissed because they are premised on the very same conduct giving rise to his other claims (i.e. Mr. Kweller's arrest and prosecution). <u>See</u> <u>Naccarato v. Scarselli</u>, 124 F. Supp. 2d 36 (N.D.N.Y. 2000) (dismissing plaintiff's claims for intentional and negligent infliction of emotional distress because "the conduct complained of are encompassed in plaintiff's claims for assault and battery and malicious prosecution").

**9. Plaintiffs' Abuse of Process Claim Fails.**

Plaintiffs' twelfth cause of action for abuse of process against the City and Chief Zikuski is premised on Plaintiffs' unsupported allegations that Chief Zikuski continued with Plaintiffs' arrest and prosecution to support Defendant Korchak's reelection campaign and to "quell public outcty" (Compl. ¶ 339).

A claim for abuse of process must be based on the defendant's misuse of regularly issued legal process for a purpose not justified by the nature of the process itself. <u>Curiano v. Suozzi</u>, 63 N.Y.2d 113, 116 (1984). The plaintiff must show that the defendant sought to obtain "some collateral advantage or corresponding detriment to [the plaintiff] which was outside the legitimate ends" of the legal process at issue. <u>N.Y. State Properties, Inc. v. Clark</u>, 183 A.D.2d 1003, 1005 (3d Dept. 1992). In this regard, *"it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him* by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." <u>Savino</u>, 331 F.3d. at 77 (emphasis added); <u>Pinter v. City of N.Y.</u>, 2013 WL 5597545, at * 15 (S.D.N.Y. Nov. 25, 2013).

In addition, a claim for abuse of process must be based upon the defendant's improper use of process "*after* it is issued." <u>Curiano</u>, 63 N.Y.2d at 116 (emphasis added). Where the defendant merely causes the *issuance* of process against the plaintiff, no claim for abuse of process will lie. <u>Minasion v. Lubow</u>, 49 A.D.3d 1033, 1036 (3d Dept. 2008) (emphasis added) ("In general, a claim of abuse of process will only lie for improperly using process after it is issued"); <u>Ametco, Ltd v. Beltchev</u>, 5 A.D.2d 631, 633 (1st Dept. 1958); <u>Williams v. Williams</u>, 23 N.Y.2d 592, 596 (1969); <u>Lopez v. City of N.Y.</u>, 901 F.Supp. 684 (S.D.N.Y. 1995). "A collateral objective is more than an improper motive." <u>Simons v. N.Y.</u>, 472 F. Supp. 2d 253, 265-66 (N.D.N.Y. 2007) Examples of collateral objectives are blackmail, extortion, and even retribution. <u>Id.</u>; <u>see also</u> <u>Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n</u>, 38 N.Y.2d 397, 404 (1975).

Here, Plaintiffs have failed to set forth sufficient plausible, non-conclusory allegations that, if proven, would establish any improper or malicious motive on the part of the City or Chief

Zikuski. Specifically, Plaintiffs have alleged no facts to support their assertion that Chief Zikuski "continued with the arrest and prosecution" of Plaintiff "[t]o bolster and support Defendant Korchack's re-election and to quell [] growing public outcry" (Compl. at ¶ 302). Even if such facts were alleged, however, allegations that the police were motivated by a desire to further their own goals, or even to cover up their own wrongdoing, "do not satisfy the collateral objective element," warranting dismissal of Plaintiff's abuse of process claim. See Santiago v. City of Rome, 2025 WL 553347, at *8 (N.D.N.Y. Feb. 19, 2025).

**10. Plaintiffs' Respondeat Superior Claim Fails.**

Plaintiffs' eleventh cause of action alleges that the City is liable under the doctrine of respondeat superior for the actions of Chief Zikuski, Captain Minor and Detective Miller, to the extent the individual BPD Defendants "committed the committed the torts of malicious prosecution, intentional, reckless, or negligent infliction of emotional distress, and negligence" (Compl. ¶ 330).

"Respondeat superior is not an independent cause of action, but a theory of liability that must attach to an underlying claim." Spence v. City of N.Y., 2022 WL 4537946, at *3 (S.D.N.Y. Sept. 28, 2022). Plaintiffs' respondeat superior claim against the City fails for a simple reason: Plaintiffs have not established any underlying tort committed by any individual BPD Defendant, let alone any for which the City could be held liable.

With respect to Plaintiffs' malicious prosecution claims, the City cannot be vicariously liable because, as set forth above, Plaintiffs fail to adequately allege a claim for malicious prosecution against any of the BPD Defendants. With respect to Plaintiffs' emotional distress claims, even if Plaintiffs had adequately alleged a claim for infliction emotional distress against any BPD Defendant (which they do not), they cannot establish the City's vicarious liability under

a theory of respondeat superior because it is well-settled that "public policy bars claims for intentional infliction of emotional distress against a governmental entity." Eckhardt v. City of White Plains, 87 A.D. 3d 1049, 1051 (2d Dept. 2011).

**11. State Law Claims Based on Allegations of Negligence Are Barred By The Doctrine of Government Immunity and Plaintiffs' Failure To Plead A Special Duty.**

To the extent any of Plaintiffs' state law claims are premised on allegations of negligence, all such claims fail because "[g]overnment action, if discretionary, may not be a basis for liability" for negligence under New York law. See Valdez v. City of N.Y., 18 N.Y.3d 69, 76–77 (2011). A municipal act is discretionary, and thus immune from liability, if it does not require adherence to a specific rule, with a "compulsory result." Lauer v. City of N.Y., 95 NY2d 95, 99 [2000]; DiMeo v. Rotterdam Emergency Medical Services, Inc., 110 AD3d 1423, 1424 [3d Dept. 2013]). Ministerial actions, by contrast, "are essentially clerical or routine." Mon v. City of N.Y. 78 N.Y.2d 309, 313 (1991). "[A]n agency of government is not liable for the negligent performance of ministerial acts unless there existed 'a special duty to the injured person, in contrast to a general duty owed to the public." Bryant v. Ciminelli, 267 F. Supp. 3d 467, 479 (W.D.N.Y. 2017) (cleaned up); see also Burroughs v. Mitchell, 325 F. Supp. 3d 249, 284-85 (N.D.N.Y. 2018). It is well-settled that law enforcement officials enjoy wide discretion in carrying out their functions, including determining how to conduct a criminal investigation.  Harrington, 607 F. 3d at 35; see also Castle Rock v. Gonzales, 545 U.S. 748, 760 (2005). Here, to the extent Plaintiffs' claims against the City are premised on its employees' allegedly negligent performance of ministerial acts, those claims fail because Plaintiffs have not alleged the existence of a special duty.

**12. Plaintiff Zoe Liberman Lacks Standing and Fails to State any Cognizable Claim**

Any claims asserted by Plaintiff Zoe Liberman must be dismissed because this Court lacks subject matter jurisdiction over them due to Ms. Liberman's failure to adequately allege that she

has standing. See Cortlandt Street Recovery Corp. v. Hellas Telecommunications, S.a.r.l., 790 F.3d 411, 417-418 (2d. Cir. 2015).   Ms. Liberman does not allege any facts suggesting that the City or BPD Defendants directly violated *her* rights, and none of the twelve separate causes of action asserts a derivative claim for loss of consortium. To the extent this Court nonetheless construes the Complaint as alleging a claim for loss of consortium, any derivative claim for loss of consortium that is related to Plaintiff's federal claims fails because it is well-settled that "[42 U.S.C.] 1983 does not support a derivative claim for loss of consortium." Pritzker v. City of Hudson, 26 F. Supp. 2d 433, 445 (N.D.N.Y. 1998). Further, to the extent the Complaint can be construed to allege derivative state law claims, those claims should be dismissed because, as set forth above, the Complaint fails to adequately allege any cognizable claims on behalf of Mr. Kweller. See Hubert v. Dept. of Corrections, 2018 WL 1582511, at * 15-16 (D. Conn. March 30, 2018) (loss of consortium claim must be dismissed where spouse's underlying claims dismissed).

## CONCLUSION

For the foregoing reasons, the City and BPD Defendants respectfully request an order dismissing the Complaint in its entirety with prejudice.

Dated:  May 19, 2025
        Albany, New York                      WHITEMAN OSTERMAN & HANNA LLP

                                    BY:    s/*Gabriella R. Levine*
                                           William S. Nolan, Esq. (BR No. 512108)
                                           Gabriella R. Levine, Esq. (BR No. 700080)
                                           Christina F. Vitolo, Esq. (BR No. 704738)
                                           *Attorneys for the City and BPD Defendants*
                                           One Commerce Plaza
                                           Albany, New York 12260
                                           (518) 487-7600
                                           wnolan@woh.com
                                           glevine@woh.com
                                           cvitolo@woh.com