UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LEOR KWELLER and
ZOE LIBERMAN,

                    Plaintiffs,

      -against-                                Case No. 3:25-cv-00343-AJB-ML


BROOME COUNTY, *et al.*,


                    Defendants.
-------------------------------------------------------X


**DEFENDANT ALYSSA CONGDON MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**


**HACKER MURPHY LLP**
James C. Knox, Esq.
Bar Roll No. 517109
Alishah Bhimani
Bar Roll No.704214
28 Second Street
Troy, NY 12180
*Attorneys for Defendant Alyssa Congdon*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS .........................................................................................1

STANDARD OF REVIEW .........................................................................................1

ARGUMENT ..............................................................................................................1

    I.    ABSOLUTE PROSECUTORIAL IMMUNITY BARS PLAINTIFFS' CLAIMS .......1

        A.   Defendant's Charging Decision ..................................................5

        B.   Defendant's Alleged Withholding and/or Destruction of
             Exculpatory Information ..............................................................9

        C.   Defendant's Decision to Appeal the Court's Dismissal of the
             Indictment Against Plaintiff Kweller ........................................12

    II.   QUALIFIED IMMUNITY BARS ANY AND ALL REMAINING
         CLAIMS BY PLAINTIFF ...........................................................................13

    III.  PLAINTIFF'S FIRST AND EIGHTH CAUSES OF ACTIONS
         MUST BE DISMISSED ..............................................................................16

        A.   False Arrest Claim ......................................................................17

        B.   Malicious Prosecution Claim .....................................................18

    IV.  PLAINTIFF'S SECOND AND TENTH CAUSES OF ACTION
         MUST BE DISMISSED ..............................................................................20

    V.   PLAINTIFF'S THIRD CAUSE OF ACTION MUST BE DISMISSED ..................20

    VI.  PLAINTIFF'S FIFTH CAUSE OF ACTION MUST BE DISMISSED ...................21

    VII. PLAINTIFF'S SEVENTH CAUSE OF ACTION MUST BE DISMISSED .............21

    VIII. PLAINTIFF'S NINTH CAUSE OF ACTION MUST BE DISMISSED ..................23

    IX.  LOSS OF CONSORTIUM DAMAGES ARE NOT LEGALLY CONIZABLE
         IN THIS LAWSUIT AND ALL OF PLAINTIFF ZOE LIBERMAN'S CLAIMS
         MUST BE DISMISSED ..............................................................................24

CONCLUSION..........................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## Cases

Abdul-Aziz v. City of New York,
  56 A.D.3d 291 (1st Dept 2008) ............................................................................18

Ahmed v. Gelfand,
  160 F.Supp.2d 408 (E.D.N.Y. 2001) .....................................................................22

Anilao v. Spota,
  27 F.4th 855 (2d Cir. 2022) .................................................................................3,4

Arzeno v. Mack,
  39 A.D.3d 341 (1st Dept 2007) ............................................................................17

Ashcroft v. Iqbal,
  556 U.S. 662 (2009). ..............................................................................................2

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
  493 F.3d 87 (2d Cir. 2007) .....................................................................................2

Baker v. McCollan,
  443 U.S. 137, 145 (1979) ........................................................................................5

Barret v. U.S.
  798 F.2d 565 (2d Cir. 1986) ...................................................................................3

Bell Atl. Corp. v. Twombly,
  550 U.S. 544, 570 (2007) ........................................................................................2

Berie v. Stevenson,
  5:18-cv-00119 (BKS/TWD), 2019 WL 1017317 *5 (N.D.N.Y. March 4, 2019) .....................17

Bordenkircher v. Hayes,
  434 U.S. 357 (1978) ................................................................................................5

Brady v. Maryland,
  373 U.S. 83 (1963) ..................................................................................................4

Buckley v. Fitzsimmons,
  509 U.S. 259 (1993) ..........................................................................................3,4,6

Burns v. City of New York,
  181 A.D.3d 554 (2d Dept. 2020) ..........................................................................17

Colon v. City of New York,
  60 N.Y.2d 78 (N.Y. 1983) .....................................................................................18

Curley v. Village of Suffern,
  268 F.3d 65 (2d Cir. 2001) ...................................................................................17

Davis-Guider v. City of Troy,
  No. 23-589, 2024 WL 5199294 (2d Cir. Dec. 23, 2024).........................................18

Dory v. Ryan,
  25 F.3d 81 (2d Cir. 1994) ...............................................................................4, 9, 12

Elias v. Rolling Stone LLC,
  872 F.3d 97 (2d Cir. 2017) .....................................................................................2

Gabriel v. County of Herkimer,
  889 F.Supp.2d 374 (N.D.N.Y. 2012)......................................................................24

Giraldo v. Kessler,
  694 F.3d 161, 166-67 (2d Cir. 2012)................................................................8, 14

Girard v. 94th Street and Fifth Ave. Corp.,
    530 F.2d 66 (2d Cir. 1976) .............................................................................................22
Groat v. Town Board of Glenville,
    100 Misc.2d 326 (Sup.Ct., Schenectady County 1979).............................................24
Harlow v. Fitzgerald,
    457 U.S. 800 (1992) ...................................................................................................14
Herrmann v. Moore,
    576 F.2d 453 (2d Cir. 1978) .......................................................................................22
Hill v. City of New York,
    45 F.3d 653 (2d Cir. 1995) ............................................................................. 4,9, 12-13
Howard v. City of Rochester,
    No. 23-cv-6561 (FPG) 2025 WL 860306 (W.D.N.Y. March 19, 2025) ....................10
Hunter v. Bryant,
    502 U.S. 224 (1991) ...................................................................................................13
Imbler v. Pachtman,
    424 U.S. 409 (1976) ...............................................................................................3,4, 13
Jocks v. Tavernier,
    316 F.3d 128 (2d Cir. 2003) .......................................................................................16
Johnson v. Town of Colonie,
    102 A.D.2d 925 (3d Dept 1984) ...................................................................................4
Kalina v. Fletcher,
    522 U.S. 118 (1997) ......................................................................................... 4, 10-11
Kanciper v. Lato,
    989 F. Supp. 2d 216, 233 (E.D.N.Y. 2013) ................................................................18
Komatsu v. City of New York,
    No. 20-cv-7046 (ER), 2021 WL 3038498 (S.D.N.Y. July 16, 2021)........................20
Koulina v. City of New York,
    06-cv-11356(SHS) 2009 WL 210727 (S.D.N.Y. 2009) .............................................19
Lawlor v. Connelly,
    471 Fed. Appx. 64 (2d Cir. 2012)........................................................................4,9, 12
Lennon v. Miller,
    66 F.3d 416 (2d Cir. 1995) .........................................................................................14
Loria v. Gorman,
    306 F.3d 1271 (2d Cir. 2002) .....................................................................................17
Martinez v. Simonetti,
    202 F.3d 625 (2d Cir. 2000) .......................................................................................17
McClellan v. Smith,
    439 F.3d 137 (2d Cir. 2006) .......................................................................................16
Mitchell v. Forsyth,
    472 U.S. 511 (1985) ...................................................................................................13
Pani v. Empire Blue Cross Blue Shield,
    152 F.3d 67 (2d Cir. 1998) .........................................................................................16
Parkinson v. Cozzolino,
    238 F.3d 145 (2d Cir. 2001) ...................................................................................3,4, 13
People v. Lancaster,
    69 N.Y.2d 20 (Ct App. 1986) .....................................................................................19

iii

Pinaud v. County of Suffolk,
    52 F.3d 1139 (2d Cir. 1995) ..................................................................4

Pinter v. City of New York,
    448 Fed. Appx. 99 (2d Cir. 2011)..........................................................21

Sanders v. City of Saratoga Springs,
    691 F. Supp. 3d 548 (N.D.N.Y. 2023)...................................................22

Saucier v. Katz,
    533 U.S. 194 (2001) ..............................................................................14

Schnitter v. City of Rochester,
    931 F.Supp.2d 469 (W.D.N.Y. 2013).......................................................6

Schultes v. Kane,
    50 A.D.3d 1277 (3d Dept 2008) ..............................................................

Stein v. Disciplinary Bd. of Supreme Court of New Mexico,
    520 F.3d 1183 (10th Cir. 2008) ...............................................................6

Thompson v. Kline,
    504 F. Supp. 3d 200 (W.D.N.Y. 2020)...................................................22

Van de Kamp v. Goldstein,
    555 U.S. 335 (2009) ..............................................................................13

Warney v. Monroe County,
    587 F.3d 113 (2d Cir. 2009) ..........................................................4,9, 12

Weiner v. McKeefery,
    90 F. Supp.3d 17 (E.D.N.Y. 2015) ........................................................16

Wyllie v. District Atty. of County of Kings,
    2 A.D.3d 714 (2d Dept 2003) ................................................................23

Ying Jing Gan v. City of New York,
    996 F.2d 522 (2d Cir. 1993) ....................................................................3

Ying Li v. City of New York,
    246 F.Supp.3d 578 (E.D.N.Y. 2017) .....................................................18

**Rules**

Fed. R. Civ. P. 12(b) ......................................................................................2

## PRELIMINARY STATEMENT

Defendant Alyssa Congdon (hereinafter "Ms. Congdon" or "defendant") moves pursuant to Fed. R. Civ. Pro. 12 (b)(6) to dismiss plaintiffs Leor Kweller and Zoe Liberman (hereinafter collectively referred to as "plaintiffs") Complaint (Dkt. 1) for failure to state a claim upon which relief may be granted. The complaint fails to sufficiently plead that defendant committed any constitutional violations against plaintiffs or a claim for any of the state law claims asserted. Further, defendant is protected by both absolute and qualified immunity, which shield her from all claims in this action.

Plaintiffs' lawsuit follows an unsuccessful criminal prosecution in which, following allegations of sexual crimes by defendants Samantha Herceg and Hailey Demokovich (hereinafter collectively referred to as the "complainants" or "complaining witnesses"), plaintiff Kweller was charged by indictment with various offenses arising out of an alleged sexual assault he perpetrated along with his brother Yaron Kweller and Jordan Rindgen. Ultimately, the trial court dismissed the indictment against plaintiff. Plaintiffs now bring this action, which reasons from the dubious premise that, if the indictment was dismissed, he has been proven not to have done the things he was accused of. Reasoning therefrom, plaintiffs now argue that every act taken along the way were all part of an unconstitutional miscarriage of justice orchestrated by the named defendants, including Ms. Congdon.

Even accepting, as defendant must at this stage, everything plaintiffs contend in their complaint as fact, every cause of action alleged is subject to dismissal under the doctrine of prosecutorial immunity. Prosecutorial immunity exists to ensure that prosecutors may pursue cases without fear that every failure to secure a conviction will mean a lawsuit. As a result of that

immunity, no viable claims lie under the facts as stated in plaintiffs' complaint and, accordingly, it should be dismissed in its entirety.

## STATEMENT OF FACTS

For purposes of defendant's motion to dismiss, defendant accepts, *arguendo*, the factual allegations set forth in plaintiff's complaint.

## STANDARD OF REVIEW

On a motion to dismiss under F.R.C.P. 12(b)(6), the Court must take "all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017). A motion to dismiss pursuant to Rule 12(b)(6) lies if a plaintiff failed to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). Conversely, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In this respect, a plaintiff need only "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 440 U.S. at 555).

As discussed below, plaintiffs have not met the requisite standard as to any claim and, therefore, the complaint must be dismissed in its entirety.

## ARGUMENT

## I.    ABSOLUTE PROSECUTORIAL IMMUNITY BARS PLAINTIFFS' CLAIMS.

2

As an Assistant District Attorney in the Broome County District Attorney's Office (hereinafter "BCDAO") during the events referenced in the Complaint, defendant is protected by absolute prosecutorial immunity.  Prosecutors are absolutely immune from liability for their conduct in "initiating a prosecution and presenting the State's case" where that conduct is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 431 (1976).  "Thus, prosecutors are shielded from liability for damages with respect to acts performed within the scope of their duties when pursuing a criminal prosecution." See Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001)(internal citations and quotations omitted); see also Barret v. U.S. 798 F.2d 565, 571-72 (2d Cir. 1986) (holding that prosecutorial immunity "encompasses not only their conduct of trials but all of their activities that can be fairly characterized as closely associated with the conduct of litigation or potential litigation."). All claims against her should accordingly be dismissed.

In determining whether a prosecutor enjoys absolute immunity, courts apply a "functional approach" and examine whether the challenged actions are "part of a prosecutor's traditional functions." Parkinson v. Cozzolino, 238 F.3d at 150.  The ultimate question, is whether the prosecutor acted as an advocate of the state. Id.; see also Anilao v. Spota, 27 F.4th 855, 864 (2d Cir. 2022) ("The immunity covers virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate.")(internal citations and quotations omitted).  This includes deciding what charges to bring against a defendant (see Ying Jing Gan v. City of New York, 996 F.2d 522, 530 [2d Cir. 1993]); "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made" (Buckley v. Fitzsimmons, 509 U.S. 259, 273(1993); the presentation of evidence to a grand jury to initiate a prosecution (see Barret, 789 F.2d at 571-72);

3

the preparation of witnesses and evidence for trial (see Kalina v. Fletcher, 522 U.S. 118, 126-27 [1997]); the presentation of perjured testimony (see Imbler, 424 U.S. 409); and even a prosecutor who conspires to present false evidence at a criminal trial (see Anilao v. Spota, 27 F. 4th at 864). Prosecutorial advocacy at the appellate stage is covered by absolute immunity because it "supports the view that it is advocacy that garners immunity, regardless of whether such advocacy occurs at the trial or appellate stage." Parkinson, 238 F.3d at 151. A prosecutor's motivation, the manner in which the task was performed, and whether preferable alternatives were available are absolutely irrelevant. Id. at 150.

A district attorney has absolute immunity from a malicious prosecution claim. See Pinaud v. County of Suffolk, 52 F.3d, 1139, 1149 (2d Cir. 1995); Johnson v. Town of Colonie, 102 A.D. 2d 925, 925 (3d Dept. 1984).  The doctrine is quite broad.  A prosecutor's failure to disclose exculpatory material is protected by absolute immunity. See Lawlor v. Connelly, 471 Fed. Appx. 64, 65 (2d Cir. 2012) (holding that the Second Circuit has repeatedly held that a prosecutor is immune from liability under § 1983 for withholding exculpatory evidence from a grand jury); Warney v. Monroe County, 587 F.3d 113, 125 (2d Cir. 2009)("if the prosecutors had tested all the evidence, and then sat on the exculpatory results for at least 72 days, they may well have violated Brady v. Maryland, 373 U.S. 83 [1963], but they would be absolutely immune from personal liability"); Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995); Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994).  Additionally, absolute immunity attaches to conspiracies to present false evidence at trial and in grand jury settings. See Dory, 25 F.3d at 83.

Preliminarily, this complaint is devoid of any allegation that defendant acted outside her role as an advocate of the State. See Buckley 509 U.S. at 273.  On the contrary, plaintiffs complain that defendant performed prosecutorial duties, but without the requisite guidance or knowledge

4

needed to handle the criminal proceedings brought against plaintiff Kweller. Dkt. 1 at ¶¶ 106-07, 125, 165-67, 169. Plaintiffs' main complaint is that defendant was inept. These allegations serve as the basis for plaintiffs' Fourth, Fifth, Sixth, and Eleventh causes of action for 42 U.S. § 1983 supervisory liability and Monell claims, and state law claims sounding in *respondeat superior*. Dkt. 1 ¶¶ 243-295, 327-331. As pleaded, plaintiffs concede that defendant's complained-of conduct is prosecutorial in nature and, as such, is shielded by absolute prosecutorial immunity. Each specific error defendant is alleged to have committed is also independently protected by absolute immunity, or is otherwise irrelevant, as detailed below.

**A.  Defendant's Charging Decision**

"[S]o long as the prosecutor has probable cause to believe that the accused committed an offense as defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). The law focuses on what the prosecutors knew at the time the charges were brought—not what could hypothetically have been discovered through further investigation. The law simply imposes no constitutional duty on prosecutors or investigators to undertake all conceivable steps prior to charging a suspect once probable cause has been established. See Baker v. McCollan, 443 U.S. 137, 145 (1979)(holding that "the Constitution does not guarantee that only the guilty will be arrested [because] [i]f it did, §1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.").

It appears that plaintiffs' primary complaint is defendant's initial decision to charge plaintiff Kweller with a crime was based on insufficient evidence. However, the facts pleaded establish that, at the time plaintiff Kweller was charged, the prosecution had probable cause to do so: [1] the testimony of the complainants, including defendant Demkovich stating that she saw

defendant Herceg engage in sexual acts with plaintiff Kweller (Dkt. 1 ¶¶ 76, 175-b), [2] complainants forensic rape examinations conducted immediately after the night in question (Dkt. 1 ¶ 175-a), [3] text messages and photographs provided to law enforcement (Dkt. 1 ¶ 79), and [4] surveillance video placing plaintiff Kweller with the complainants and his criminal codefendants at the time of the alleged sexual assault (Dkt. 1 ¶¶ 88-89).  Thus, the complaint itself alleges there were more than sufficient facts to establish probable cause to make the charging decision a lawful and discretionary exercise of authority.  But the protection of absolute immunity is so broad that, even if the charging decision was mistaken, defendant is insulated from civil liability since such is quintessentially a prosecutorial function.  See Schnitter v. City of Rochester, 931 F.Supp.2d 469, 474 (W.D.N.Y. 2013); Stein v. Disciplinary Bd. of Supreme Court of New Mexico, 520 F.3d 1183, 1194 (10th Cir. 2008), citing Buckley, 509 U.S. at 273.

Plaintiffs contend that, had defendant undertaken a more exhaustive investigation, she would have uncovered other evidence they claim shows plaintiff Kweller's "innocence" – mainly, evidence relevant to the complainants' credibility.  But this theory relies exclusively on facts that were not known or available to defendant at the time plaintiff Kweller was charged in February 2022: the contents of the complainants' phones (made available in February 2023) and DNA evidence excluding plaintiff Kweller from material obtained defendant Herceg (July 2022). Dkt. 1 ¶176, 186.  This post hoc rationale cannot serve to impose liability.

Defendant's decision to credit the accounts of the alleged victims, without the need to subject them to an involuntary search of their phones to confirm or dispel plaintiff Kweller and his criminal codefendants' speculative claims they contained exculpatory information—merely because "defendants Herceg and Demkovich were using their phones and sending and receiving electronic date, before, during, and after the alleged crime"—is a textbook example of legitimate

prosecutorial judgment, not an actionable wrong. Dkt. 1 ¶ 122.

While the complaint is riddled with conclusory allegations that defendant knew or should have known that the contents of the phones contained exculpatory information, plaintiffs concede that forensic evidence of the phones was not available until February 2023—a year <u>after</u> the charging decision was made. Dkt. 1 ¶ 186.  Even assuming, *arguendo*, that defendant erred by not forcing the victims of a sexual assault to turn over their phones, such decision was undisputedly shielded by absolute immunity, as it, too, was a legitimate prosecutorial judgment.  Lastly, it cannot go unnoticed that several courts denied plaintiff Kweller and his criminal codefendants attempts to retrieve the contents of the phones before the complainants ultimately consented, in part, because of "the allegedly speculative nature of plaintiff's arguments that the phones would contain relevant, material, [and] admissible evidence." Dkt. 1 ¶¶ 144, 111, 119.  Thus, to now claim defendant is somehow civilly liable for not forcing access to the phones or preserve their contents is logically infirm.

Plaintiffs further allege defendant erred by choosing not to retrieve a folder of selective hardcopy printouts of electronic cellular data the complainants provided to their attorney (the "Saitta Folder") before filing charges. Dkt. 1 ¶¶ 115-117. That decision is plainly protected by absolute immunity.  Plaintiffs' disagreement reflects nothing more than a policy disagreement with how the criminal justice system allocates discretion, which the law vests exclusively with the prosecutor.  Defendant's discretionary choice to await a comprehensive, content-based phone search rather than rely on selective, attorney-curated hardcopies, is precisely the type of core prosecutorial function to which absolute immunity applies. Dkt. 1 ¶ 118.

To the extent that plaintiffs' attempt to circumvent prosecutorial immunity by alleging plaintiff Kweller was arrested solely to obtain further evidence (Dkt. 1 ¶ 129) and defendant's

participation in strategy meetings with police, colleagues, and the complainants (Dkt. 1 ¶¶ 104-08) constituted investigatory or administrative conduct, such reframing is meritless. Again, the complaint itself makes clear that the challenged conduct—particularly defendant's involvement in discussions and decisions leading to plaintiff Kweller's arrest—was undertaken as part of her prosecutorial role in initiating and directing a criminal prosecution, and is therefore entitled to prosecutorial immunity under binding Supreme Court and Second Circuit precedent. Furthermore, the existence of probable cause, as explained above, vitiates any claim that the ultimate decision to charge plaintiff Kweller was improper.

The Supreme Court has explained that the scope of protected acts "must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." Buckley, 509 U.S. at 273. The Second Circuit has also explained that absolute immunity extends to meetings with law enforcement and decisions resulting from those meetings. Giraldo v. Kessler, 694 F.3d 161, 166-67 (2d Cir. 2012). Concededly, the Supreme Court cautioned that just because a prosecutor performs an act does not render it immune, including for example, "[w]hen a prosecutor performs investigative functions normally performed by a detective or police officer," including, for example, "if a prosecutor plans and executes a raid on a suspected weapons cache." Id. The Court noted that, similarly, a prosecutor who takes non "the detective's role in searching for the clues and corroboration that might give h[er] probable cause to recommend a suspect be arrested," would not be protected by absolute immunity. Id.

However, nowhere does plaintiff allege that defendant undertook such activities. Instead, plaintiffs' allegations either assert that defendant evaluated evidence (they say incorrectly), or failed to take on a sufficiently investigative role by failing to search for the clues and corroboration

that they claim would have exonerated plaintiff Kweller. Any effort to rebrand defendant's prosecutorial decision making as "administrative" or "investigative" because it occurred during internal or interagency meetings is inconsistent with both the facts alleged and the controlling law. The conduct at issue—defendant's decision to charge plaintiff Kweller—is quintessential prosecutorial advocacy and absolutely immune from civil liability.

### B. Defendant's Alleged Withholding and/or Destruction of Exculpatory Information

Preliminarily, the complaint clearly alleges that defendant's decisions regarding exculpatory materials occurred within the course of her prosecution or plaintiff Kweller and involved functions associated with her role as trial counsel.  To the extent that plaintiffs' properly allege defendant withheld exculpatory evidence, a prosecutor is absolutely immune from liability for doing so. See Lawlor, 471 Fed. Appx. at 65; Warney, 587 F.3d. at 125; Hill, 45 F.3d at 661; Dory, F. 3d at 83. However, it is important to address what plaintiffs believe are their most damaging claims against defendant, as the remainder warrant little attention.

First, plaintiffs aver that "defendant Herceg ultimately testified at the criminal trial in this matter that she was instructed to destroy electronic data relating to the night in question by defendant Congdon . . . and she did in fact destroy that evidence." Dkt. 1 ¶¶ 72.  This allegation invites the reader of the complaint to conclude that defendant also instructed defendant Herceg to obtain a new phone and a new iCloud account before she ultimately consented to a forensic evaluation to be conducted on her phone. Dkt. 1 ¶ 185.  However, the only specific allegation pleaded relates to an alleged instruction to delete social media accounts. Dkt. 1 ¶¶ 110.  Tellingly, plaintiffs do not state when this alleged instruction occurred, but strategically sandwich it between two paragraphs that do include dates, presumably to induce the reader to conclude that it occurred between December 14, 2022 and December 22, 2021. Dkt. 1 ¶¶ 109-11.

A plain reading of the complaint, however, makes clear that, prior to defendant's assignment to the case on December 8, 2021 (Dkt. 1 ¶ 106) and prior to defendant's first contact with the complainants on December 14, 2021 (Dkt. 1 ¶ 109), the complainants themselves had already conspired to delete their social media accounts on December 3, 2021 (Dkt. 1 ¶ 74-j-k). On that date, defendant Demkovich texted defendant Herceg and other third parties to start deleting photos of them drinking and defendant Herceg confirmed that she "deleted all [her] posts and changed [her] user name to no last night." Dkt. 1 ¶ 74-k. Defendant Herceg further confirmed to defendant Demkovich and third parties that "yes, I deleted everything then made it private and changed everything." Dkt. 1 ¶ 74-r. Accordingly, to the extent that plaintiffs' now claim that defendant is responsible for the destruction of alleged exculpatory material located on the complainants' social media platforms, the text messages reproduced in the complaint make such claim impossible. Defendant had not even *met* the complainants at the time the destruction occurred. Dkt. 1 ¶ 109.

This is not a factual scenario akin to <u>Howard v. City of Rochester</u>, No. 23-cv-6561 (FPG) 2025 WL 860306 (W.D.N.Y. March 19, 2025) (unreported), where absolutely immunity was denied, in part, because a prosecutor lied about possessing a cell phone that contained video evidence of the crime alleged to have been committed, and allegedly destroyed the phone while an appeal was pending. <u>Howard v. City of Rochester</u>, 2025 WL 860306 at *2, 4. First, any allegation that the deleted social media posts contained exculpatory evidence is, at best, speculative. Second, the complaint makes clear that such destruction was not per the instruction of defendant, since it occurred well before defendant first met the complainants. More importantly, however, is that even assuming, *arguendo*, that defendant gave this instruction and it led to the destruction of exculpatory evidence, it is nonetheless protected by absolute immunity. See <u>Kalina</u>,

10

522 U.S. at 126-27.

Plaintiffs further allege that "at some point during the investigation or prosecution, defendant Demkovich informed defendant Congdon and others at the BCDAO that she never said "no" or physically resisted any sex acts" (Dkt. 1 ¶ 161) and "defendant Herceg claimed to have no memory of what occurred" and the sex she had with plaintiff Kweller was consensual (Dkt. 1 ¶¶ 162, 136) to endorse the claim that defendant withheld exculpatory information.  It appears that plaintiffs learned this information after reviewing defendant Demkovich's phone and reproduced what they consider the most troubling messages in ¶74 of the complaint.  However, after scouring not only the messages but the entire document itself, it is unclear what fact plaintiffs rely on to allege that defendant had firsthand knowledge of this information.

Plaintiffs fail to plead any facts to establish that either defendant Demkovich or Herceg ever told defendant that they were not sexually assaulted, and it is well known that neither saying "no" nor physical resistance is required to prove sexual assault.  What the reproduced text messages do make clear is that defendant Herceg's alleged lack of memory of the incident was a result of severe intoxication (Dkt. 1 ¶ 74-h) and plaintiff Kweller and his criminal co-defendants provided alcohol and drugs on the night in question (Dkt. 1 ¶¶ 32-33, 43, 51).  And even the most liberal reading of the complaint demonstrates that any statements in which defendant Demkovich claimed to have said "no" were only made to defendant Binghampton Police Department (hereinafter "BPD"), and no recording of them was ever made. Dkt. 1 ¶ 82.  Plaintiffs solely blame defendant Amanda Miller and/or others from BPD for not recording such statements. Dkt. 1 ¶¶ 82, 74-w[1].  There is no factual support that those statements were made also made to defendant.

_____

[1] Dkt. 1 ¶ 74-w reads: "December 28, 2021 – Defendant Demkovich to her mother: "I told them [BPD] the next day I was questioning if what happened to me was actually rape . . . ." but does

Even a generous reading of the complaint shows that the only fact of whether defendant Herceg claimed to have no memory of having sex or said sex was consensual was found on defendant Demkovich's forensic cell phone report. Dkt. 1 ¶ 136, 74-h,n.  As detailed above, said extraction was not made available unil February 2023, and nowhere in the complaint is any fact alleged that defendant knew Herceg made these claims before.  Even assuming that defendant did know, and did not disclose it, such decision was made in defendant's capacity as an advocate of the state and protected by absolute immunity. See Lawlor, 471 Fed. Appx. at 65; Warney, 587 F.3d. at 125; Hill, 45 F.3d at 661; Dory, F. 3d at 83.

From what can be discerned, the remainder of the allegations as they relate to exculpatory evidence are as follows: (1) defendant's failure to preserve the contents complainants' phones, (2) defendant's failure to turn over the Saitta Folder, (3) defendant's failure to present exculpatory evidence at the grand jury.  These allegations merit little discussion, as defendant's decisions relating to the complainants' phones and Saitta Folder are fully briefed in Point I-A supra, and it is undisputed that withholding exculpatory material from the grand jury is squarely protected by prosecutorial immunity. Warney, 587 F.3d. at 125.

## C. Defendant's Decision to Appeal the Court's Dismissal the Indictment Against Plaintiff Kweller

Plaintiffs allege that defendant acted improperly by filing a notice of appeal after the trial court dismissed the indictment against plaintiff Kweller (Dkt. 1 ¶ 196) and that was compounded by defendant's failure to withraw it following the acquittal of plaintiff Kweller's criminal codefendants. Dkt. 1 ¶ 201.  Plaintiffs contend that the appeal was filed "without any legal basis."

---

not allege any facts to connect that defendant Demkovich's reference to "them" was actually BPD.

Dkt. 1 ¶ 5.  Regardless, the decision to pursue an appeal is entirely protected by absolute prosecutorial immunity.

As previously discussed, prosecutors enjoy absolute immunity for conduct that is "intimately associated with the judicial phase of the criminal process," including appeals. See Imbler, 424 U.S. at 430; see also Parkinson, 238 F.3d at 151.  The decision to file a notice of appeal is squarely within defendant's prosecutorial litigation function and therefore protected, even if done with improper motives or in bad faith. See Hill 45 F.3d at 661.  The same applies to defendant's decision to continue pursuing the appeal following the criminal co-defendants' acquittal.  The fact that a special prosecutor ultimately decided to withdraw the appeal adds no weight as to whether the original decision to appeal was proper. Dkt. 1 ¶¶ 67, 202.  Rather, the appeal was part of an active prosecutorial case file, handled through the courts, reviewed by a successor prosecutor, and resolved through a formal judicial process.  Defendant enjoys prosecutorial immunity regardless of whether said decisions in hindsight were wrong.

## II.    QUALIFIED IMMUNITY BARS ANY AND ALL REMAINING CLAIMS BY PLAINTIFFS.

To the extent that plaintiffs' complaint may be read to allege conduct by defendant that occurred when defendant was "not acting as 'an officer of the court,' but [wa]s engaged in other tasks, say, investigative or administrative tasks," (See Van de Kamp v. Goldstein, 555 U.S. 335, 342 [2009], citing Imbler, 424 U.S.. at 431 n.33), qualified immunity mandates the dismissal of the claims against her. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The availability of qualified immunity should similarly be decided by a court at the "earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Qualified immunity shields government officials from performing discretionary functions,

like investigative functions, for "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800 (1992). An "objectively reasonable" standard is used to make sure determination (Id.), and "officers can have reasonable, but mistaken beliefs as to probable cause . . . and in those situations courts will not hold that they have violated the Constitution." Saucier v. Katz, 533 U.S. 194, 205 (2001); see also Lennon v. Miller, 66 F.3d 416, 423 (2d Cir. 1995).

Here, insofar as plaintiffs' allegations may include allegations that relate to administrative or investigative acts, plaintiffs complain that defendant: attended an investigative meeting and discussed the complaining witnesses' cell phones and assigned defendant to "the investigation" (Dkt. 1 ¶¶ 106-108); that defendant, along with other named defendants, met with the complaining witnesses about their cell phones (Dkt. 1 ¶ 109); was informed of text message printouts from the complaining witnesses cell phones in the possession of their private attorney and directed that they be picked up by the BCDAO's investigator (Dkt. 1 ¶¶ 115-117); continued thereafter to try to get consent from the complaining witnesses to extract data from their cell phones (Dkt. 1 ¶ 118); attempted to draft a search warrant for a buccal swab to obtain plaintiff's DNA (Dkt. 1 ¶ 120); failed to correct reports in the media about the case (Dkt. 1 ¶ 124), and determined, in concert with police, that plaintiff should be charged and arrested (Dkt. 1 ¶¶ 128-31).

Attending a meeting with police and other members of the BCDAO to discuss an investigation, for example, is protected as a primary prosecutorial duty (see Giraldo, 694 F.3d at 166-67), and in any event, plaintiffs do not complain that the meeting violated clearly established constitutional norms. Obviously, such meetings are typical at the outset of any criminal investigation. Similarly, directing an investigator to pick up evidence and drafting search warrants

14

for law enforcement are not actions which violate established constitutional norms.

To the extent that plaintiffs' complaint can be generously read to allege that defendant improperly directed police to arrest plaintiff Kweller, even on plaintiffs' own facts it was objectively reasonable for a prosecutor like defendant to believe that there was probable cause to believe plaintiff Kweller committed the crimes charged: there was an eyewitness account. Dkt. 1 ¶ 76, 79, 88-89, 175-a-b.  While plaintiffs do, indeed, claim that "prior to plaintiff [Kweller's] arrest, defendants Zikuski, Congdon, Miller, and Korchak were in possession of information and material that vitiated any allegedly existent probable cause, and which called into serious doubt the reliability and credibility of defendants Herceg and Demkovich" (Dkt. 1 ¶ 142), they ignore their own pleadings, which make clear that the only "material" alleged to have been in possession of defendant was footage of the party in the night in question, which plaintiffs concede, did not include footage of the Washington Street Office where the alleged sexual assault occurred. Dkt. 1 ¶¶ 47-57.[2]  Accordingly, reasonable information was abundantly present for defendant to even mistakenly determine that probable cause existed to pursue criminal charges against plaintiff Kweller.

Plaintiffs also ignore that a grand jury voted to indict plaintiff Kweller on Rape in the First Degree. Dkt. 1 ¶ 170.  Plaintiffs plead the allegations against plaintiff Kweller were false—despite that a dismissal on legal insufficiency does not affirmatively negate the allegations against him were false—and then attempt to rely on that assertion, plus the fact that the appeal against him was

---

[2]    As explained above in Point I-b supra, plaintiffs concede that statements the complainants made where they purportedly disclaimed that they never said "no" where not made to defendant but to defendant Miller and others a BPD. (Dkt. 1 ¶ 82).  These statements were not documented by BPD and therefore were not turned over. Id. Even assuming, arguendo, that defendant was aware of the statements the complainant made to BPD, a moment of voiced self-doubt by a complaining witness does not equate to a conspiracy to violate a criminal defendant's rights.

15

withdrawn by a different prosecutor to conclude that "no probable cause existed to arrest plaintiff." Dkt. 1 ¶ 130.

But regardless of whether plaintiffs have adequately alleged that a reasonable officer would not have arrested plaintiff Kweller, the standard is one of arguable probable cause, which exists so long as reasonable officers would find the cause sufficient. See McClellan v. Smith, 439 F.3d 137, 147-148 (2d Cir. 2006). Here, plaintiff's bald "denials are insufficient to obviate probable cause." Weiner v. McKeefery, 90 F. Supp.3d 17, 32 (E.D.N.Y. 2015) (citations omitted). Moreover, although plaintiffs' complaint is rife with things plaintiffs believe that defendants *should* have investigated, defendant did not have a "duty to investigate exculpatory defenses offered by the person being arrested." See Jocks v. Tavernier, 316 F.3d 128, 135-136 (2d Cir. 2003).

The affirmative defense of qualified immunity may be decided on a 12(b)(6) motion to dismiss the complaint if the defense appears on the face of the complaint. Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998). Here, qualified immunity issue can be established on the face of the complaint, as it identifies the salient, relevant, facts known to defendant. Moreover, the criminal complainants were steadfast in their claims that plaintiff Kweller and his criminal co-defendants sexually abused them, and a prosecutor is entitled to believe their victims. Thus, qualified immunity insulates defendant from any allegations in this action not squarely covered by absolute immunity (of which defendant claims there are none).

## III.  PLAINTIFFS' FIRST AND EIGHTH CAUSES OF ACTION MUST BE DISMISSED.

Plaintiff's first cause of action alleges defendant violated his constitutional rights to be free from false arrest and malicious prosecution. See Dkt. 1 ¶¶ 220-27. Plaintiff's eighth cause of action alleges the same causes of actions under New York State law. See Dkt. 1 ¶¶ 302-16. The existence of probable cause is a complete defense to both false arrest and malicious prosecution

16

claims, whether under state or federal law. See Arzeno v. Mack, 39 A.D.3d 341, 341 (1st Dept 2007); see also Burns v. City of New York, 181 A.D. 3d 554, 555 (2d Dept 2020).

### A. False Arrest Claim

"A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." Berie v. Stevenson, 2019 WL 1017317 *5 (N.D.N.Y. March 4, 2019). To succeed on such a claim, plaintiff must establish "(1) the defendant intended to confine him, (2) plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." In the context of false arrest claims, "probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been [committed] or is being committed by the suspected individual, and probable cause must be judged under the totality of the circumstances." Burns, 181 A.D.3d at 554. In evaluating probable cause, courts consider the facts available at the time of the arrest. See Martinez v. Simonetti, 202 F.3d 625, 635 (2d Cir. 2000). "When information is received from a putative victim or an eyewitness, probable cause exists, unless circumstances raise doubt as to the person's veracity." Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001). A prosecutor "may rely on a complaint to establish probable cause and cannot be held liable for a constitutional violation simply because the complaint turns out to be false." Loria v. Gorman, 306 F.3d 1271, 1289 (2d Cir. 2002).

Here, as noted above in Points I and II supra, the facts alleged in the complaint demonstrate that plaintiff Kweller's arrest was supported by ample, constitutionally adequate probable cause, and at the time of defendant's charging decision, there were insufficient circumstances to doubt the complainants' veracity. Accordingly, the false arrest claims in Counts One and Eight of the complaint must be dismissed. Should the Court disagree, reasonable and trustworthy information

17

nevertheless existed for defendant to determine, at a minimum, that arguable probable cause existed to arrest plaintiff Kweller. Thus, claims that he was prosecuted without constitutionally sufficient probable cause are belied by his own allegations.

### B. Malicious Prosecution Claim

Setting aside the complete defense of immunity, "[i]n order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." Davis-Guider v. City of Troy, No. 23-589, 2024 WL 5199294 at *2 (2d Cir. Dec. 23, 2024). Under New York state law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Id. (internal citations and quotations omitted).

Probable cause to prosecute consists of facts and circumstances that would lead a reasonably prudent person to believe the plaintiff is guilty. Ying Li v. City of New York, 246 F.Supp.3d 578, 611 (E.D.N.Y. 2017) (internal citations omitted). A grand jury indictment gives rise to a presumption of probable cause in both federal and state cases. See Kanciper v. Lato, 989 F. Supp. 2d 216, 233 (E.D.N.Y. 2013) (citing Colon v. City of New York, 60 N.Y.2d 78, 82 (N.Y. 1983). The presumption may be overcome by evidence of misrepresentation or falsification of evidence before a grand jury. Abdul-Aziz v. City of New York, 56 A.D.3d 291, 292 (1st Dept 2008). In Abdul-Aziz, the prosecutor was accused of procuring an indictment by fraud or suppression by failing to disclose certain information the plaintiff considered exculpatory. Id. The court reiterated therein that, even accepting the misconduct complained as true, "there is no requirement that the prosecution disclose to the grand jury all evidence in its possession that is favorable to the accused

18

even though such information undeniably would allow the grand jury to make a more informed determination" and swiftly dismissed the malicious prosecution claim. Id. (citing People v. Lancaster, 69 N.Y2d 20, 25-26 [Ct App. 1986]).

For the reasons discussed above in Point I-II supra, the facts pleaded in plaintiffs' complaint do not rebut the presumption of probable cause created when a grand jury indicted him. Dkt. 1 ¶ 167-68. The complainants' grand jury testimony was not perjured simply because plaintiff Kweller's indictment was ultimately dismissed, and defendant was not required to present so-called exonerating evidence to the grand jury. Plaintiffs' claim that the indictment was obtained by fraud or suppression because defendant kept exculpatory information from the grand jury does not overcome the presumption of probable cause, even if credited. Dkt. 1 ¶ 169.   This alone establishes that plaintiffs' federal and state law claims for malicious prosecution must be dismissed as a matter of law.

Plaintiff also failed to adequately allege that defendant acted with actual malice, but instead makes mere "conclusory allegations or legal conclusions masquerading as factual conclusions." Koulina v. City of New York, 06-cv-11356(SHS) 2009 WL 210727 at *5 (S.D.N.Y. 2009).  The only relevant factual allegation reads: "[n]evertheless, defendants did proceed with the prosecution and appeal out of malice; recklessness; willful blindness; and for ulterior motives including their own promotion, publicity, and appeasement of public pressure." Dkt. ¶ 205.  Even affording plaintiff every reasonable inference, the remainder of the complaint does not support such statement but, at best, alleges that defendant's challenged conduct was a product of negligent hiring, training, and supervision—not malice. Dkt. 1 ¶¶ 103, 106-07, 117, 120-29.  Accordingly, and for all the reasons above, plaintiff's malicious prosecution claims in plaintiff's Second and Eighth causes of action must be dismissed.

IV.    **PLAINTIFF'S SECOND AND TENTH CAUSES OF ACTION MUST BE DISMISSED.**

Plaintiff's second cause of action alleges defendant and defendants Korchak, Cronin, Minor, Zikuski, and Miller violated his constitutional rights by fabricating evidence, by withholding exculpatory material and impeachment evidence, and by deliberately failing to conduct a constitutionally adequate investigation. Dkt. 1 ¶¶ 228-36. From what can be discerned from the complaint, nowhere do plaintiffs allege defendant Congdon fabricated inculpatory evidence, including false witness statements. Dkt. 1 ¶ 231.  Nor do they allege defendant Congdon "directed the destruction of material exculpatory and impeachment evidence in order to hide it from Mr. Kweller's defense counsel and the Court." Dkt. 1 ¶ 232.  On the contrary, plaintiffs' factual allegations make clear that the complainants sought to destroy social media evidence well before even meeting defendant Congdon. See Point I-B supra; Dkt. 1 ¶¶ 74-k,r.  Furthermore, as explained in Point I, supra, all such claims against defendant Congdon are expressly foreclosed by the doctrine of prosecutorial immunity and equally lack merit.  This branch of plaintiffs' complaint must be dismissed as a matter of law.

V.    **PLAINTIFF'S THIRD CAUSE OF ACTION MUST BE DISMISSED.**

Plaintiff's third cause of action alleges defendant violated his constitutional rights by failing to intervene on his behalf to prevent his malicious prosecution and deprivation of liberty. Dkt. 1 ¶¶ 237-42.  Plaintiff's theory is based on the assumption that defendant is liable for failure to intervene for her decision – after an evaluation of the evidence and the credibility of the complainants – to pursue criminal charges against him.  This theory is untenable and is in direct tension with the concept of prosecutorial discretion, and is otherwise precluded by absolute prosecutorial immunity discussed in Point I, supra. See Komatsu v. City of New York, No. 20 CIV. 7046 (ER), 2021 WL 3038498 at *14 (S.D.N.Y. July 16, 2021).

20

Plaintiff also does not plead the elements of a failure to intervene claim in his complaint. "Law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence," but to adequately plead this claim, a plaintiff must also "allege [defendant] observed or has reason to know of the constitutional violation, and that there must have been a realistic opportunity to intervene to prevent the harm from occurring." Id. Defendant could never have had a reasonable opportunity to intervene in her own actions—the person primarily plaintiff credits with deciding to arrest and prosecute him—nor in the actions of her supervisor, the District Attorney, nor in those of an independent police department like BPD, or internal office investigators who lacked charging authority. Dkt. 1 ¶ 134. Such intervention was either logically impossible or defendant lacked the authority to do it. Accordingly, and for all the reasons above, plaintiff's Third cause of action must be dismissed.

## VI.    PLAINTIFF'S FIFTH CAUSE OF ACTION MUST BE DISMISSED

It is well established that a Monell claim asserts liability against a municipality and is inapplicable against an individual like defendant. Defendant is sued in her individual capacity, but even if not, even generously read, plaintiff's Monell claims are purely derivative of his claims against the individual defendants and, as set forth above, all such claims against defendant are subject to dismissal as a matter of law. See Pinter v. City of New York, 448 Fed. Appx. 99, 106 (2d Cir. 2011).

## VII.    PLAINTIFF'S SEVENTH CAUSE OF ACTION MUST BE DISMISSED

Plaintiffs' seventh cause of action alleges all defendants engaged in a civil rights conspiracy to violate his constitutional rights. Dkt. 1 ¶¶ 217-221. "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor

21

and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act

done in furtherance of that goal causing damages." <u>Sanders v. City of Saratoga Springs</u>, 691 F.

Supp. 3d 548, 561 (N.D.N.Y. 2023).

Plaintiffs' complaint does not specify any instance where defendant "shared a common

unlawful goal" with another state actor or otherwise had an agreement to act in order to deprive

plaintiff of his constitutional rights.  To the extent that plaintiffs allege a conspiracy within the

BCDAO, "it is well settled that there can be no actionable conspiracy under the civil rights laws if

the alleged conspirators are employees of a single organization and their alleged actions were taken

in the course of their employment." <u>Ahmed v. Gelfand</u>, 160 F.Supp.2d 408, 413 (E.D.N.Y. 2001)

(<u>citing</u> <u>Girard v. 94th Street and Fifth Ave. Corp.</u>, 530 F.2d 66, 71 (2d Cir.), cert. denied, 425 U.S.

974 (1976); <u>see also</u> <u>Herrmann v. Moore</u>, 576 F.2d 453, 459 (2d Cir. 1978).  All actions alleged

by defendant and the other employees of the BCDAO (the district attorney, other ADAs, and/or

office investigators), such actions occurred in the course of their employment, and conspiracy

claims relying thereon must be dismissed.

To the extent that plaintiff alleges a conspiracy existing between defendant and/or other

members of the BCDAO along with the chief of and/or other members of the BPD, the complaint

lacks plausible facts to support such a conspiracy and includes only vague and conclusory

allegations, which do not suffice to sufficiently allege a constitutional conspiracy.

Moreover, for the reasons explained in Point I <u>supra</u>, each and every overt act defendant is

alleged to have committed is independently protected by absolute prosecutorial immunity, further

foreclosing any valid claim that she engaged in a civil rights conspiracy. <u>See</u> <u>Thompson v. Kline</u>,

504 F. Supp. 3d 200, 216-17 (W.D.N.Y. 2020) (holding that a prosecutor is entitled to absolute

immunity on a civil rights conspiracy claim when it stems from a pre-trial meeting where a

prosecutor allegedly conspired with witness to produce false testimony at trial).  Accordingly, plaintiffs' Seventh cause of action must be dismissed.

## VIII.    PLAINTIFF'S NINTH CAUSE OF ACTION MUST BE DISMISSED

Plaintiff's ninth cause of action alleges a state law claim for intentional, reckless, or negligent infliction of emotional distress against all defendants. Dkt. 1 ¶¶317-21.  It is well settled that claims against government bodies are barred as a matter of public policy, precluding plaintiff from asserting this claim against ADA Congdon.[3] See Wyllie v. District Atty. of County of Kings, 2 A.D.3d 714, 720 (2d Dept 2003).  Notwithstanding, plaintiff does not make specific allegations that ADA Congdon's conduct constituted "extreme and outrageous conduct, which so transcends that bounds of decency as to be regarded as atrocious and intolerable in a civilized society" as is necessary to state a claim of intentional or reckless infliction of emotional distress. Id.  As explained, defendant Congdon's alleged conduct was squarely within her role and duties as a prosecutor, and as such, cannot be said to meet the high pleading standard of intentional and/or reckless infliction of emotional distress.

Similarly, plaintiff does not allege any facts to show ADA Congdon "breach[ed] a duty owed to [him] which unreasonably endangered [his] physical safety, or caused [him] to fear for [his] own safety," as necessary to support a claim for negligent infliction of emotional distress. Schultes v. Kane, 50 A.D.3d 1277, 1278-79 (3d Dept 2008).  It is unclear how plaintiff and/or his family's safety was every endangered, as no specific facts were alleged to that effect.  Instead, plaintiff points to social media posts and photos demonstrating the public was boycotting several restaurants he had ties to. Dkt. 1 ¶¶ 92-107.  To be sure, plaintiff does not allege that defendant

---

[3]      To the extent plaintiff would rely on conduct protected by prosecutorial immunity to establish wrongful infliction of emotional harm, defendant relies on her arguments above.

Congdon had anything to do with the creation of such social media posts or the dead animals that were supposedly left outside the restaurants.  Accordingly, this branch of plaintiff's Complaint must be dismissed in its entirety.

IX.    **LOSS OF CONSORTIUM DAMAGES ARE NOT LEGALLY COGNIZABLE IN THIS LAWSUIT AND ALL OF PLAINTIFF ZOE LIBERMAN'S CLAIMS MUST BE DISMISSED.**

Plaintiff Zoe Liberman asserts a derivative claim for loss of consortium based on the alleged constitutional violations and state torts committed against her husband, plaintiff Kweller. However, claims for loss of consortium are not cognizable under federal civil rights statutes, include 42 U.S.C. § 1983, and must be dismissed as a matter of law. See Gabriel v. County of Herkimer, 889 F.Supp.2d 374, 405 (N.D.N.Y. 2012).   To the extent that plaintiff Liberman asserts a state law loss of consortium claim, it is purely derivative of her husband's underlying state tort claims.  If those underlying claims are dismissed or barred by prosecutorial or qualified immunity, the derivative claim also fails.

Plaintiff Liberman's loss of consortium also suffers from a separate, and fatal, infirmity. Loss  of consortium damages must be predicated upon a physical injury to one spouse is reflected in the Restatement (Second) Torts § 693[1] which provides that: "one who by reason of his tortious conduct is liable to one spouse for illness or other bodily harm is subject to liability to the other spouse for the resulting loss of the society and services of the first spouse...." (emphasis added). In Groat v. Town Board of Glenville, 100 Misc.2d 326 [Sup.Ct., Schenectady County 1979], a spouse's derivative claim for lost services, society and companionship was dismissed in that there appeared to be "no authority for permitting same where the harm complained of did not result in physical injury to the spouse or physical confinement away from the spouse." 100 Misc.2d at 330, 418 N.Y.S.2d 842. Here, plaintiffs' failure to allege any physical injury attributable to

24

plaintiff Kweller subjects the loss of consortium claim to dismissal, since in the absence of a physical injury claim, the spouse claiming loss of consortium is merely alleging that the other spouse did not continue to provide certain services, and the defendant is placed in the impossible position of deciphering the intricacies and intimacies of a marriage. Accordingly, and for all the reasons above, plaintiff Liberman's claims in this action must be dismissed.

## CONCLUSION

For the above reasons, defendant Alyssa Congdon respectfully requests the Court grant her motion to dismiss plaintiff's complaint as against her in its entirety, with prejudice, together with such other and further relief the Court deems just and proper.

DATED:    May 19, 2025

HACKER MURPHY, LLP

/s/James C. Knox
James C. Knox, Esq.
Bar Roll No. 517109
Alishah E. Bhimani
Bar Roll No. 704214
*Attorneys for Defendant Alyssa Congdon*
